FOULKES CONTRACTING COMPANY ET AL. *v.* CROWDER ET AL.

[No. 13,688. Filed May 2, 1930. Rehearing denied September 4, 1930. Transfer denied August 26, 1931.]

Charles H. Bedwell, Matson, Carter, Ross & McCord, Austin V. Clifford, Adolph Schreiber and Harry T. Ice, for appellants.

Kessinger & Hill, William R. Nesbit and Charles D. Hunt, for appellees.

MCMAHAN, J.—This is an action by appellees, resident landowners of the city of Sullivan, against the Foulkes Contracting Company and certain officials of that city to set aside the acceptance by the common council of a sanitary sewer and sewage-disposal plant constructed by the contracting company, hereafter referred to as "appellant," and to enjoin the enforcement and collection of the assessments which were made on account of such improvement, in so far as they affect the real estate owned by the plaintiffs. There was a judgment for the plaintiffs, hence this appeal.

The questions presented for our consideration relate to the overruling of appellant's demurrers to the first and second paragraphs of amended complaint, to the overruling of appellant's motion for a venire de novo, and to the correctness of each conclusion of law.

In discussing the action of the court in overruling its demurrer to the several paragraphs of the complaint, appellant says that where there is a special finding of facts, and conclusions of law are

stated thereon, it is harmful error to overrule a demurrer to a bad complaint, if the conclusions of law stated are not valid. *American Ins. Co.* v. *Replogle* (1888), 114 Ind. 1, 15 N. E. 810, and *Vestal* v. *Craig* (1900), 25 Ind. App. 573, 58 N. E. 752, are cited to support this contention. In the case first cited, a demurrer to a reply was erroneously overruled, and, in answer to the suggestion that the ruling was harmless because a right result was reached, it was said that the special findings could not be looked to in order to determine the propriety of a ruling on the pleadings, unless the findings show that they rest upon pleadings other than the one ruled upon, and that the sufficiency of a pleading, when demurred to, must be determined upon the facts stated therein, and not upon matters elsewhere appearing in the record. While it is true that the sufficiency of a pleading must be determined upon the facts therein stated, and that we cannot look to a special finding or to any other part of the record for that purpose, we may look to the entire record to determine whether the ruling, if erroneous, was prejudicial to the adverse party. *Pittsburgh, etc., R. Co.* v. *Rushton* (1925), 90 Ind. App. 227, 148 N. E. 337, 149 N. E. 652. There is nothing in the *Replogle Case* indicating that the party appealing had excepted to the conclusions of law and thus admitted, for the purpose of testing the correctness of such conclusions, that the facts were fully and correctly found. It does not appear that the questions presented by the demurrer were or could have been presented to the court by an assignment challenging the correctness of the conclusions of law. Moreover, the evidence does not appear to have been in the record. The correct-result rule was not applicable. In *Vestal* v. *Craig, supra,* the judgment was reversed for error in overruling a demurrer to the complaint. In answering the contention of the appellee that, inasmuch

as there was a special finding of facts with conclusions of law, the overruling of the demurrer was not material, the court recognized the rule contended for by the appellee, saying that it was founded upon the premise that a right result had been reached. The court, however, refused to apply the rule, because it was not prepared to say "from all that appears upon the record, that a right result was reached." To same effect see *Bowlus* v. *Phenix Ins. Co.* (1892), 133 Ind. 106, 32 N. E. 319, 20 L. R. A. 400; *Douthit* v. *Douthit* (1892), 133 Ind. 26, 32 N. E. 715.

Appellees, in answer to the contention that the court erred in overruling the demurrer, assert that, "where there is a special finding of facts, the overruling of a demurrer to the complaint is harmless error." While there are cases in this state to the effect that, where there is a special finding of facts and conclusions of law, any error in overruling a demurrer to a pleading is immaterial, the rule so announced is not an accurate statement of the law. Suppose a demurrer to a defective complaint has been overruled, and, upon the trial, evidence to establish the omitted allegations has been admitted over objection, and, on appeal, the errors assigned relate to the overruling of the demurrer and to the admission of the evidence, would it be correct to say the errors were harmless or immaterial simply because the facts had been found specially, the correctness of the conclusions of law not being challenged? We think not. In such a case, the facts found would not be within the issues, and there would be no admission that they were fully and correctly found, even for the purpose of testing the correctness of the conclusions of law. It will not do to say such a ruling is always harmless. A more accurate statement would be that such a ruling may be harmless. Whether such a ruling is harmless depends upon the

record in the case under consideration. It is hardly safe or wise to attempt to state a general rule upon this subject. It may be said, however, that, when the facts within the scope of the issues are fully and correctly found, so that the same questions are presented by the overruling of a demurrer to a pleading and by exceptions to the conclusions of law, and where it appears that a correct result has been reached, the overruling of a demurrer will not be prejudicial. In such a case, the ruling on the demurrer becomes immaterial because the same questions are presented by exceptions to the conclusions of law. As was said in *Runner* v. *Scott* (1898), 150 Ind. 441, 50 N. E. 479: "By saying that an error made in overruling a demurrer to a pleading is not material where there is a special finding, inasmuch as a correct conclusion of law upon the facts found would cure the error, if any, the courts do not mean, as the cases cited will show, that correct pleadings may be dispensed with, but simply, that, since one who excepts to conclusions of law thereby admits that the facts have been correctly found, it will, in general, be presumed that the facts in issue are correctly stated, and, hence, that, in considering the correctness of the conclusions of law, all questions that could be raised on the sufficiency of the pleadings will necessarily be considered." And, after stating that the rule had no application where a pleading had been stricken out by sustaining a demurrer to it, and that a party, by excepting to the conclusions of law, might perhaps be held to have waived any such error in the finding by admitting that the facts had been correctly found, it was held that, even though there had been a special finding of facts, with conclusions of law thereon, a party might nevertheless insist upon a consideration of the correctness of the court's action in overruling a demurrer to a pleading. In this connection, the court, at p. 444,

said: "This is particularly true where, as in the case before us, the party who objects to the pleading did not except, and did not wish to except, to the conclusions of law, but simply insists that the pleading is defective, and that the court erred in overruling a demurrer to it. And because, by considering the conclusions of law, there might be a correct decision of the questions raised, it does not follow that the same end may not also be reached by considering the sufficiency of the pleading." In support of the statement that the rule is not applicable where a demurrer has been *sustained* to a good pleading, see *Woodward* v. *Mitchell* (1895), 140 Ind. 406, 408, 39 N. E. 437.

Where the facts found are all within the scope of the issues, and exceptions to the conclusions of law drawn therefrom present the same questions that are raised by the demurrer, a consideration of the action in *overruling* a demurrer may be omitted. See *Gas Light, etc., Co.* v. *City of New Albany* (1902), 158 Ind. 268, 63 N. E. 458; *Ross* v. *Banta* (1893), 140 Ind. 120, 34 N. E. 865, 39 N. E. 732; *Woodward* v. *Mitchell, supra.* The unqualified statement found in some of the cases to the effect that, where there is a special finding, errors in overruling demurrers to pleadings are not material, must be limited to the particular cases in which the statement appears. The Supreme Court, in *Continental Nat. Bank* v. *Discount, etc., State Bank* (1927), 199 Ind. 290, 157 N. E. 433, held that the overruling of a demurrer to an insufficient answer was primarily harmful, and would be so declared where the record fails to show affirmatively that the ruling on the demurrer was harmless. While the court was there considering a case where the jury had returned a general verdict, the rule there announced is applicable to a case where there is a special finding. In the instant case, the facts within the issues are fully

and correctly found, and the questions presented by the demurrer are fully presented under the assignment challenging the correctness of the conclusions of law. We will, therefore, proceed to a consideration of the conclusions of law.

The material facts found by the court are as follows: On September 11, 1923, the common council of the city of Sullivan entered into a contract with appellant for the construction of a sanitary sewer and disposal plant, all the steps preliminary thereto having been taken; appellant agreed to furnish all the material and labor for the construction of said sewer system and disposal plant for $203,099.54, which was to be paid out of assessments against the real estate in the sewer district. On September 12, 1923, appellant sublet the construction of the sewer system, not including the disposal plant, to Henry Reese and Son, who furnished all the materials and labor that were furnished and performed in constructing the sewer; appellant furnished all material and labor used in constructing the disposal plant. In November, 1923, a large number of owners of property affected by the construction of the sewer, by letter, notified the mayor and common council that the sewer was not being constructed in accordance with the plans and specifications in certain particulars, some of the parties sending such notice being plaintiffs in the instant case; soon thereafter, and after notice thereof had been given by publication in a newspaper by direction of the common council, a meeting was held at the city hall for the purpose of discussing any objection property owners might make; this meeting was attended by the mayor, the members of the common council, the engineer in charge of the work and various property owners; one of the objections urged at this meeting was the action of the engineer in requiring the contractor to mix a quantity of clay in the cement mortar used in

cementing sewer joints. Following this meeting, the city council caused an investigation to be made to ascertain the opinions of prominent engineers and sewer builders as to whether the mixing of clay with the mortar was beneficial or detrimental; some of the opinions received approved the practice, others disapproved it; the specifications required the mortar to be made by mixing cement and sharp clean sand; the engineer directed that not to exceed 10 per cent of clay should be mixed with the mortar, which was done by the engineer in good faith, under the belief that it would be beneficial; this practice, however, was discontinued after the property owners had made objections to such use. In December, 1923, a meeting of the property owners was held and an organization was perfected for the purpose of protecting the interests of the property owners; funds were collected and attorneys were employed for that purpose; a committee representing such property owners caused a petition to be filed with the State Board of Accounts requesting that the department of inspection and supervision of public officials cause an inspection to be made of the construction of the sewer; in response to this request, a field examiner of the department of inspection made an examination and inspection; the common council communicated with the State Board of Accounts and sought to ascertain what the board had learned of the alleged defective work and was advised to have the city engineer file his acceptance and make the assessment roll and that, as soon as the inspector of the State Board of Accounts made his report, the matter would be taken up with the council.

In May, 1924, appellant and the subcontractor notified the common council that the work required by the contract had been completed; this was followed by a remonstrance by some of the landowners against the

acceptance of work. A member of the common council, who had been an inspector of the work, and the city engineer made an inspection and reported that the work had been completed in substantial compliance with the contract and recommended that it be accepted; the engineer also filed a final estimate showing there was due the contractors $203,784.52. The council, on motion, and not by resolution, accepted the work as being completed, but postponed action on approving the final estimate for further investigation; a few days later, the report of the examiner of the State Board of Accounts was sent to the council, stating that the work had not been done according to the contract and recommending that it not be accepted, the particulars in which the work did not comply with the contract being pointed out; at an adjourned meeting of the council, the former acceptance of the work was rescinded and set aside; at a subsequent meeting of the council, held for the purpose of considering the objections to the work, the contractor and subcontractor expressed their willingness to make any and all changes or alterations required by the council, and to co-operate in determining whether the work had been properly done.

Appellant and the subcontractor were notified of the action of the council in rescinding and setting aside the acceptance of the work and ratified and confirmed the action of the council and agreed thereto, and, without objection, permitted the council to employ another engineer to supervise the reconstruction of said improvement; the council appropriated $2,200 for this purpose. On October 7, 1924, this engineer filed a report in which a great many defects were pointed out and recommended that certain reconstruction work be done before final acceptance; at a subsequent meeting of the council, appellant and the subcontractor stated that they were willing to remedy all the defects pointed

out and the council employed this engineer to supervise the reconstruction work; reconstruction work was thereafter done at a cost of about $8,000; later, the engineer appointed to oversee the reconstruction work filed his report recommending that the work be accepted and that the contractor be allowed $200,312.22, such acceptance being conditional upon the contractor filing a bond in the sum of $25,000, to guarantee, during the period of 10 years, the cost of maintenance or replacement of any part of the sewer system that might be due to faulty material or workmanship which then existed or might thereafter develop; a resolution to that effect was adopted and the city engineer directed to prepare a primary assessment roll, and notice of hearing of remonstrances to assessments on April 14, 1925, was given. In May, 1925, this assessment roll, after being modified, was confirmed and delivered to the department of finance; an amended assessment roll was adopted later and appellant's maintenance bond of $25,000, approved.

In relation to the defects in the construction of the sewer, the provisions relating to the laying of the sewer pipe and to the cement mortar are found, and it is then found that such provisions were not complied with, that a great many of the joints were defective and that only a small part of such work had been corrected; that, in addition to the improper care in making the joints, there were irregularities in the bottom of sewer; that the defects in the joints were the more serious; that the defective joints were more numerous in the smaller lines than in the larger lines. The defective joints will probably give difficulty in the operation and maintenance of the sewer because of the inflow of ground water which will increase the quantity of sewage to be treated at the disposal plant, the washing of sand, soil and gravel through the sewer, and the probability of the

growth of roots from trees clogging the sewer and impeding the flow; there are about 18 miles of sewer lines with approximately 47,500 joints, many of such joints not being properly cemented. By such improper joint construction, the contractor made a material saving in time and material; the value of the system has been depreciated by reason of the defective work, and the cost of keeping it in repair will be materially greater than it would have been if the sewer had been constructed according to the contract; the irregularities in the line of the bottom of the sewer were caused by reason of the pipe not being laid on the established grade, a few of such irregularities affect the carrying capacity of the sewer to the extent that the sewer stands full or partially full of sewage and other deposits, and if not corrected, will require frequent cleaning, at a constant expense to the city. These defects were pointed out by the special engineer to the council while the reconstruction work was being done and the more pronounced irregularities in the grade lines were corrected. It is not possible to anticipate the increased cost of maintenance, or the decrease in the value of the sewer because of such defects.

*The special reconstruction engineer, in his report to the council, pointed out certain defects and estimated the additional cost of maintenance on account of such defects would be from $500 to $1,000 a year, and that the depreciation in the value of that part of the system was $15,000; that the city should require the reconstruction of all defective parts before acceptance, unless it was possible under the law that the contractor should be given the option of delivering the part showing the less serious defects, at a reduced cost, and suggested a reduction of $15,000 after correction of the most serious defects. He also advised the council that he had not included in his estimate the matter of the re-*

*construction of the manholes and catch basins, the main trunk line and outflow sewer and the disposal plant.*

The disposal plant is not constructed in accordance with the contract in that the walls of the disposing tank and the filter beds are not of the proper thickness; the broken stone on the filters is less than required; the size of the stone composing the filter is different from that required; the finish of the walls is not according to contract; and the required amount of reinforced steel is not included in the wall of the filter beds. The discrepancies in the thickness of the walls and filter beds, in the amount of stone in the filter beds, and in the size of the stone in the filter beds and the finish of the walls are of no serious consequence and the plant as constructed is as efficient as if it had been constructed as required by the contract. The amount of the shortage of the steel cannot be accurately calculated and has never been remedied.

The contract required that 1,400 lineal feet of 16-inch cast iron pipe be used in the main outlet line of the sewer, but the contract said nothing about the grade, weight or thickness of such pipe or the method of constructing the joints thereof. Bidders were required to bid by unit prices, and appellant bid $4.50 for the cast iron pipe and $2 for 18-inch tile sewer pipe. On direction of the engineer, the iron pipe was omitted and 18-inch tile sewer pipe substituted; this change was ordered in good faith and approved by the council under the belief that it would result in a saving to the property owners and under the belief that the council had the power to make such change; no conditions were encountered in the construction that made it necessary to substitute the tile so substituted for the iron pipe; much of the tile pipe so substituted for the iron pipe is exposed above the surface of the ground and is liable to be broken; many of the joints of substituted tile were

not constructed according to the contract but were constructed in an unskillful manner, and left open so that, from some of the joints, sewage flows and finds its way into an open water course; such condition has existed ever since the pipe was laid. This sewer was designed and intended to be a sanitary sewer to take care of and carry off injurious substances from residences and factories, including fecal matter from water closets, privies, etc., and it is of a high degree of importance that such a sewer be so constructed as to prevent the escape of sewage. By the omission to seal the joints, the sewage will leak out and is liable to and may become a menace to the health of the citizens. In many places, surface water has passed through such joints, washing into the sewer clay and other substances having a tendency to fill and clog the sewer so as to materially reduce the efficiency of the system as a whole.

The contract required all manholes to be constructed of concrete blocks or brick. With the consent of the engineer, all of these, with the exception of three, were made of monolithic concrete construction, and were so defectively constructed as to detrimentally affect the efficiency of the system; these defects have not been corrected. In allowing the final estimate, a deduction of $2,315.70 was made because of such change in the manholes. A majority of the assessments has been paid, or the owners of property have signed waivers. The amount of the assessments for which waivers were signed and for which bonds were issued is $90,190.20. Said bonds were accepted by the subcontractors in partial payment and are now held by persons not parties to this action. None of the plaintiffs has paid any part of his assessment, nor signed any waiver agreeing to pay his assessment, nor has any of them tapped or made any use of the sewer system or disposal plant. Each

plaintiff is the owner of real estate assessed for such improvement and the treasurer is threatening to enforce and collect the assessment.

If the work is finally accepted and the assessment roll, as prepared, approved and plaintiffs are required to pay their several assessments, they and each of them, will suffer irreparable injury. The common council, in adopting the resolution of acceptance, acted in good faith without any intention of defrauding the city or any property owner and without any intention of favoring the contractors, under the mistaken belief that it had the right to adopt such resolution and accept the sewer upon the condition that the contractors should file a maintenance bond. The city council, the individual members thereof, and each of the engineers, when the sewer was accepted, had actual knowledge that the sewer system had not been completed according to the contract as hereinbefore stated, and had knowledge of the radical departures from the contract. *The action of the council in accepting the improvement with full knowledge of such facts, and in face of the objections thereto was arbitrary, capricious and unjustifiable and operated as a fraud upon each of the plaintiffs.*

*It is further found that the acceptance by the council of the sewer system, as constructed, was not the exercise of a discretion on its part in determining that the work had been constructed in substantial compliance with the contract, but was the arbitrary and capricious act of the council, which acted upon the* assumption that it had the power to accept the system as constructed, notwithstanding it was not constructed according to the contract, as a substitute for the work contracted for; that the acts of adopting and confirming the assessment roll and the approval of the final estimate in favor of appellant were each without authority and were a fraud in law.

Upon these facts, the court concluded as a matter of law:   (1) That the acceptance of the sewer system by the common council was a constructive fraud against each and all of the plaintiffs and should be set aside; (2) that the several assessments were illegal and should be set aside and the defendants enjoined from enforcing or collecting the same; and (3) that the plaintiffs were not guilty of any laches and were not estopped from maintaining this action.

Appellant says the portions of the finding which we have italicized state evidentiary facts and conclusions of law instead of ultimate facts and, for that reason, must be disregarded in testing the correctness of the conclusions of law.   Appellees say that, with the italicized portions omitted, sufficient facts remain on which to base the conclusions of law.   We cannot concur in the contention that all of the finding which is italicized must be disregarded.   The finding that the reports of the engineer to the common council contained certain statements is not a finding that the things therein stated, in fact, existed, and must be disregarded as evidentiary facts.   The statement that the acts of common council in adopting and confirming the assessment roll and in approving the final estimate were without authority, is clearly a conclusion of law and must also be disregarded.

Whether fraud exists is a question of fact, or, as is sometimes said, is a mixed question of law and fact, and must be found as a fact, unless the primary facts found impel and force the conclusion that fraud existed as a fact.   The court specifically found that, when the report of the engineer stating that the work had been completed according to contract was made, and when the assessments were approved and confirmed, the city council and each of the engineers had actual knowledge that the sewer system had not been

completed according to the contract, and of the radical departures from the contract, and that the action of the common council in accepting the improvement operated as a fraud upon each of the plaintiffs. This is a sufficient finding of fraud. This being true, the statements that certain acts were a fraud in law may be disregarded as being conclusions of law, although we do not so decide.

Appellant is quite urgent in its contention that the common council was invested with the power and duty of determining all questions relating to public improvements in the city; that its decision that the improvement in question had been completed according to the contract and in accepting the same as completed was a judicial act by a tribunal having jurisdiction to make it; that such decision, though erroneous, was not void, nor open to attack on the ground that the facts were not otherwise; and that the same presumptions attended its decisions accepting the improvement as completed and in confirming the assessments as attend the judgment of courts of general jurisdiction. In support of these contentions, appellant cites and relies upon such cases as *State, ex rel.,* v. *Martin* (1926), 198 Ind. 516, 154 N. E. 284, and *Hull* v. *Board, etc.* (1924), 195 Ind. 150, 143 N. E. 589, in each of which cases, the action of the board of county commissioners had been attacked in a collateral proceeding. In each of those cases, the complaining party was given a right to appeal from the action of the board of commissioners and did not do so. In the instant case, the property owners had no right to appeal from the action of the common council in accepting the improvement as completed according to the contract. They had no right of appeal from the action of the council in approving and confirming the assessment roll except for the sole purpose of contesting the amount of the assessments. They could

not, by appeal, raise any question as to whether the work was completed in accordance with the contract. The above cases and those of like character are of no controlling influence in the instant case. *Darnell* v. *Kellar* (1896), 18 Ind. App. 103, 45 N. E. 676, was an action by contractors to enforce a statutory lien for an assessment for the construction of a sidewalk. It was there held, and properly so, that the act of the city in accepting the work was conclusive in the absence of fraud, and that the defendant could not, by way of answer or counterclaim, set up a claim for damages by reason of the failure of the contractor to do the work according to the contract. The question as to whether the property owner, by a proper pleading in equity, could have had the acceptance of the sidewalk and the assessment vacated because of fraud was neither involved nor referred to in the opinion. In *Lux, etc., Stone Co.* v. *Donaldson* (1903), 162 Ind. 481, 68 N. E. 1014, there is no claim that there was any fraud, constructive or otherwise, on the part of the city officials in accepting the work. The question involved in the instant case has been discussed and decided against appellant's contention in *Alsmier* v. *Adams* (1914), 62 Ind. App. 219, 105 N. E. 1033, 109 N. E. 58, and in *Pottinger* v. *Bond* (1924), 81 Ind. App. 107, 142 N. E. 616, and, on the authority of these cases, we hold the court did not err in the conclusions of law. See, also, *Blain* v. *City of Delphi* (1924), 195 Ind. 463, 145 N. E. 764, and *Town of Woodruff Place* v. *Gorman* (1912), 179 Ind. 1, 100 N. E. 296.

The finding is not ambiguous or indefinite. Sufficient facts are found to warrant a judgment in favor of appellees upon the conclusions of law properly based upon the finding. The motion for a *venire de novo* was correctly overruled.

Judgment affirmed.