Urban *v.* Nanticoke City et al., Appellants.

Argued October 16, 1933.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*Wm. A. Skinner*, for appellants.

*R. Lawrence Coughlin*, for appellee.

Opinion by Stadtfeld, J., December 16, 1933:

Claim petition was filed by the Central Poor District of Luzerne County against the City of Nanticoke for compensation insurance resulting from the death of Vincent Urban, husband of Anna Urban, an inmate of the Retreat Mental Hospital owned by the said Poor District.

The said Vincent Urban was killed on the city dump while in the course of his employment. The accident occurred December 9, 1930 and death occurred December 20, 1930.

The referee found, inter alia, the following facts:

"8. Anna Urban, becoming insane, was placed in the Mental Hospital of the Central Poor District, Retreat, Pa., in 1905. She was paroled and returned to her husband, Vincent Urban, for five months during 1907, four months during 1908 and 1909 and seven months in 1920 and 1921. On February 1, 1921 she was recommitted to the Mental Hospital where she has been confined ever since. The probability of her recovery is not good.

"9. On the 13th day of April, 1909 Vincent Urban gave a bond to the Central Poor District of Luzerne County, Pa., in the sum of Five Hundred Dollars ($500.00), by which he bound himself, inter alia, to pay to the Treasurer of the Central Poor District the sum of $1.75 per week, payable monthly in advance, for the board, maintenance, care and treatment of his wife, Anna Urban, so long as she remained a patient in the Hospital for the Insane. The obligation stipulated in the bond remained in full force and virtue to the date of the death of Vincent Urban.

"10. On December 28, 1919 Vincent Urban paid to the Central Poor District the sum of $1,023.75 to apply on the board, maintenance, care and treatment of his wife, Anna Urban, as a patient in the Mental Hospital at Retreat.

"11. Between 1921 and the date of his death, Vincent Urban, made no payments for the board, maintenance, care and treatment of his wife, although he visited her at the Mental Hospital on holidays and acknowledged his obligations to pay her board and care. As late as July, 1929 when asked to pay the overdue account, he replied that he could not pay at that time.

"12. While Anna Urban was not living with her husband at the time of his death, there had been no repudiation of the marriage vows by either of them. For her own safety and the safety of her family, society found it necessary to confine her in a hospital for the insane. The husband's obligation to support his wife, and the wife's dependency upon her husband maintained to the very date of the death of the husband."

The referee found, inter alia, as a conclusion of law, "3. That since Vincent Urban left to survive him a dependent widow, she is entitled to compensation in accordance with Article III, Section 307 of the Act as amended April 13, 1927."

The Central Poor District was appointed guardian of Anna Urban and as such substituted as plaintiff.

The referee made an award to the use of Anna Urban. An appeal was taken to the Workmen's Compensation Board which affirmed the award of the referee. An appeal was then taken to the common pleas court which dismissed the appeal and entered judgment in favor of claimant. From that judgment this appeal is taken.

The sole question on this appeal is whether there is legally competent evidence to sustain the award. Vorbnoff v. Mesta Machine Co., 276 Pa. 207. An examination of the record shows that no evidence was offered on behalf of defendant.

The Compensation Act provides Section 307, (7) "No compensation shall be payable under this section to a widow, unless she was living with her deceased husband at the time of his death, or was then actually dependent upon him for support."

The provisions are in the alternative. In this case the widow was not, on account of her condition, living with her husband at the time of his death. It resolves itself, therefore, into the question of whether she was actually dependent on him at that time. Hall-

man v. Starr Printing Co., 70 Pa. Superior Ct. 563; McGuire v. James Lees & Son, 273 Pa. 85.

Appellant contends that claimant was not *actually* dependent upon her husband, and relies to a great extent upon the stipulation entered of record, at the time of the hearing, that "It is agreed by and between counsel for claimant and defendant, that the decedent has made no payments whatever for the support of his wife at this hospital for ten years prior to the accident, or since 1921." This, however, ignores the other circumstances disclosed by the evidence.

The evidence discloses that claimant was paroled and returned to her husband for five months during 1907, four months during 1908 and 1909, and seven months in 1920 and 1921. On February 1, 1921, she was recommitted to the Mental Hospital where she has been confined ever since. The bond which the husband gave in 1909 to the Central Poor District of Luzerne County, in the sum of $500, by which he bound himself to pay the sum of $1.75 per week for the board care, treatment and maintenance of his wife, remained in full force and effect to the date of the death of Vincent Urban. On December 28, 1919, he paid to the Central Poor District $1,023.75 for account of his wife's care and treatment. Between 1921 and the date of his death he made no further payments. He did however visit his wife on holidays. Miss Standish, an employe of the Central Poor District testified, and was corroborated by the ledger account of the hospital which showed that under date of "July, 1929, Mr. Urban states that he can not pay at this time." She sent him the bill and he came in and said "he couldn't pay it at that time." "He said he would pay it, but he couldn't at that time because he didn't have the money." "I asked him if he went to see his wife and he said he did, but it made him feel bad, and he didn't go often." The ledger record showed charges from 1921 to April, 1923, 116 weeks $250.57, and from

May 1, 1923 to 1928, for 296 weeks, $1,480. No charge appeared since 1928 in the books of the hospital. According to the testimony of Walter Wilson, steward at the hospital, such charges are made in the central office.

Mrs. Anna Mundry, a daughter of Anna and Vincent Urban, testified that her father lived with her; that he always visited her mother during the holidays; that when her mother was released on parole she came to live with her and her father; he always talked that if he was ever able to pay he would. He said "she is my wife and it is my duty to do it." That he always said that when she was able to come out he would take her; that he always maintained a home until the witness got married and he then came to live with her. It appeared that the mother and father owned the home and the daughter kept the home for them.

There is no evidence of an abandonment by the husband, nor a repudiation by him of his responsibility. The mere fact of no payment by him for the last ten years of his life is not conclusive, particularly in view of his manner of payment in that he paid one lump sum, in December, 1919, $1,023.75 on account of her care and maintenance. His liability for her support still existed, and could at any time have been enforced by the Poor District. The mere fact of indulgence granted him in the matter of payment should not debar claimant, if otherwise entitled.

The true test of *actual dependency* is discussed by the present Chief Justice in Creasy v. Phoenix Utilities Company, 276 Pa. 583, 586: *"If the separation is merely for the mutual convenience of the parties and the wife is dependent and the obligation of the husband to support her is either recognized or performed, the right to compensation exists as fully as if they were living together and if, for any reason the husband fails to perform that duty for a time, the wife remains en-*

*titled, upon injury to him, to such compensation as the law provides in cases of dependency:* Gentile v. Phila. & Reading Ry. Co., 274 Pa. 335, 339. If this were not so, the mere fact of separation, though perhaps for a proper and legitimate purpose, such as the future establishment of a new home, would, in all cases, bar a claim on behalf of the family. That it was not the intention of the legislature to establish such a harsh rule seems amply proven by the fact that the word 'dependent' was used rather than make the right of the widow depend upon the fact of receiving support at the time of the accident. The criterion in cases of this character, consequently, must be whether or not a wife, living apart from her husband and dependent upon him, but not actually receiving support from him, has acquiesced in his action under circumstances amounting to a repudiation by him of his legal obligation to support his family."

Appellant in his brief admits that "if the wife by proper action taken shows that she did not acquiesce in this repudiation, she may recover, although no contributions were actually made." In the instant case there was not, and could not, under the existing conditions, be an acquiescence by her in any alleged disclaimer or repudiation of responsibility on the part of the husband.

The cases cited by appellant are readily distinguishable from the instant case. In the case of Hallman v. Starr Printing Co., 70 Pa. Superior Ct. 562, relied upon by appellant, the facts were entirely different. In that case the wife had been an inmate of an insane asylum of the State for fourteen years prior to her husband's death; he had not visited her for at least ten years before he died and had not contributed anything to her support during the time she was in the hospital. In that case the referee and the board found that dependency did not exist: In the instant

case the referee found that dependency existed and this finding was approved by the board. A careful examination of the evidence leads us to the conclusion that there was sufficient legally competent evidence to sustain the finding, and the same is therefore binding upon us.

The assignments of error are overruled and the judgment of the lower court affirmed.