CONTRACTORS CONTRACT NOY 5948 and AMERICAN MUTUAL LIABILITY INSURANCE COMPANY, v. MRS. CORNELIA MORRIS and FLORIDA INDUSTRIAL COMMISSION.

18 So. (2nd) 247  
June 2, 1944  
Rehearing Denied June 19, 1944

January Term, 1944  
Division A

498

*Maguire, Voorhis & Wells,* for appellants.

*Fred M. Harris* and *R. B. Huffaker,* for claimant and *Allen Clements* for Workman's Compensation Division, Florida Industrial Commission, appellee.

CHAPMAN, J.:

On June 15, 1943, James S. Morris was killed while engaged in construction work of the Naval Air Station at Banana River, Florida. Surviving the deceased was his wife, Cornelia Morris, and an eighteen year old daughter. The claimant, Cornelia Morris, married the deceased in the State of North Carolina during the year 1922, and approximately ten years thereafter moved to Bartow, Florida. A home was

purchased and the family lived together at Bartow until about the year 1940.

Difficulty was encountered by the deceased in obtaining employment around Bartow, and a line of hosiery was shipped to him for sale from Burlington, North Carolina. He used his car in traveling about the State in his effort to sell this merchandise. He left Bartow and his wife and daughter about 1940 and made West Palm Beach headquarters. The home had just been constructed and the husband's going to West Palm Beach (according to the wife's testimony) was temporary and incidental to his employment. There was no permanent separation of husband and wife. The wife testified that she did not accompany her husband on his trips about the State because the husband's salary was insufficient to support them while on the road. It was difficult for the deceased to retain a responsible position and his employment changed from time to time, and he was killed when working on the Naval Air Base at Banana River.

During the interim from 1940 to the time of his death in June, 1943, he visited his family at Bartow, letters passed between the deceased and the claimant and their daughter, and there is evidence to the effect that he sent money to his family while away. The exact amount and dates of sending money between 1940 and 1943 are not clear from our study of the record. The visits by the deceased when living at West Palm Beach to his family at Bartow were of short duration of time.

It appears from the record that the claimant, after moving to Bartow, prepared herself as a bookkeeper and obtained employment and contributed to the living expenses of the home. She was earning the sum of $150.00 per month when her husband died. Moneys coming to her from her father's estate, in part, were used in payment of the home—now free from debt. The claimant denied a permanent separation between her and the deceased, but testified they lived apart largely because of the nature of her husband's employment; and that employment for him about Bartow was unobtainable.

The deceased, for a period of some three or four months next prior to his death, by the record, was shown to have cohabited with a woman by the name of Ruth Butler at Midway Tourist Camp near Melbourne, Florida. The parties held each other out as husband and wife and were recognized as such by their friends and acquaintances. It developed shortly after the death of decedent that the parties were not married. The period of cohabitation by the evidence was shown to have begun in February, 1943, and ended with the death of Mr. Morris. The claimant here is not shown to have been acquainted with Ruth Butler, nor did she have a knowledge of the cohabitation, and first learned of it after the death of her husband.

An award in behalf of the claimant was made by a deputy commissioner and on appeal was affirmed by the circuit court. The insurance carrier has perfected an appeal here. Counsel for appellee filed here a motion to dismiss the appeal because the award was made by a deputy commissioner and not by the Florida Industrial Commission, and that the motion to dismiss is ruled by our holding in Tigertail Quarries, Inc., v. Ward, 154 Fla. 122, 16 So. (2nd) 812. The motion to dismiss is hereby denied under the authority of Josh Davis v. Artley Construction Co. and Florida Forest & Park Service v. Strickland (opinions filed May 19, 1944) in which we held that the Tigertail Quarries case should be given a prospective rather than a retroactive construction.

Counsel for appellant pose for adjudication here the question of whether or not the widow of an employee killed in a compensable accident is, under all circumstances and without regard to actual dependency, entitled to compensation because she was living apart from her husband for justifiable cause. The applicable statute is Subsection 15 of Section 440.02, Fla. Stats. 1941 (also F.S.A.), which provides that: "the term widow includes only the decedent's wife, living with him at the time of his injury or death, or dependent for support upon him, and living apart at said time for justifiable cause." It is admitted that the death of Morris was compensable.

The case of Johnson v. Midland Constructors, Inc., 152

Fla. 289, 11 So. (2nd) 895, involved facts similar to the case at bar. Meta M. Mitchell and Walter Johnson were married in November 1937 in the State of Delaware. Johnson deserted his wife during the year 1938. Mrs. Johnson preferred charges against her husband for non support and obtained a judgment against him requiring the payment to her by him of the sum of $25.00 bi-weekly. He paid a part of the judgment and Mrs. Johnson instituted divorce proceedings against him. Johnson was killed in 1940. Mrs. Johnson dismissed the divorce proceedings. The question presented here was whether or not Mrs. Johnson was entitled to compensation under the Workmen's Compensation Act.

We held that she was entitled to compensation, and in part said:

"In the case at bar, we are confronted with the obligation of the husband to support the wife and stepchild. As to the wife, both law and morals require the husband to support her if she is living with him at his death or apart from him for justifiable cause. It is shown that Johnson voluntarily deserted his wife; they were not divorced at the time of his death and he was not contributing to her support. We do not think that the fact that she was working for a modest compensation affected her status under the Workmen's Compensation Act. In the case last cited (Panama City Stevedoring Co., Inc. v. Padgett, 149 Fla. 687, 6 So. 822), we said that dependency was a question of fact but as to the wife it does not enter into the picture because the very terms of the act render the husband liable for her support so the case relied on is not in point and dependency is not the governing criterion."

The evidence conclusively shows that the claimant was the wife of James S. Morris on June 15, 1943, at the time of his death. We fail to find in the record any evidence of a legal separation, nor does it appear from the evidence that there was even an estrangement between the parties. Letters passed between them and the deceased sent money to his wife at Bartow. The claimant (wife), appreciating the difficulty of her husband holding permanently any responsible position, prepared herself to work and earn money to sup-

plement the family income. The reasons assigned for the deceased leaving Bartow have not been contradicted or disputed. We find no evidence of estrangement and the separation was not permanent but for economic causes affecting the family.

The case of Urban v. Nanticoke City, 111 Pa. 195, 169 Atl. 466, involved the construction of a Workmen's Compensation statute viz: "No compensation shall be payable under this section to a widow, unless she was living with her deceased husband at the time of his death or was actually dependent upon him for support." The claimant for many years had been an inmate of an insane asylum. She had not been living with her husband on account of her physical condition. The decedent husband had not made payments to the hospital for the support of his wife for ten years prior to his death. The court held that the claimant (wife) was a dependent. See Dietrich v. Hudson Coal Co., 117 Pa. 193, 177 Atl. 606; General American Tank Car Corp. v. Sudomir, 93 Ind. App. 113, 182 N. E. 587; Beck v. Kansas City Pub. Service Co., (Mo. App.), 48 S.W. (2nd) 213.

Schneider on Workmens' Compensation Law, Vol. 2 (2nd ed.) 1224, par. 369, states the rule viz:

"369. Wife Living Apart from Husband.— . . . Where there is no legal separation and no actual separation in the nature of an estrangement, the husband and wife are 'living together,' although they may not be physically dwelling together, and in such case the wife is entitled to the benefit of the statutory provision creating a conclusive presumption as to her dependency. . . .

" 'If the law should receive the construction that there must be physical dwelling together in order to satisfy the statute, it is plain that the purpose of the law would in many cases be defeated, because in many cases the spouse may be absent from home for long intervals, although there be no break in the marriage relation, no estrangement, and no intent to separate or sever the existing relation or change the relations or obligations created by the marriage contract.'

"The question of whether or not the husband and wife were living together is, of course, one of fact: but when they

are found to have been living together, the presumption of dependency is one of law. To justify a finding that husband and wife are not living together, there must be an intentional or permanent separation or estrangement; and temporary absence, such as is necessitated by employment, visits, or conveniences, do not suffice."

The law makes it the legal duty of a husband to support his wife and family. It was his duty at the common law and in some states it is made so by statute; it is more than a moral obligation and not dependent on contract. See Ponder v. Graham, 4 Fla. 23. Thompson v. Thompson, 86 Fla. 515, 98 So. 589; Schouler on Marriage and Divorce, Vol. 1 (6th ed.) 856-858, pars. 780-782; 30 C. J. 516-17, par. 29; 26 Am. Jur. 934-5, par. 337-8.

Although the law requires a husband to support his wife and family, it does not preclude the wife, if she so desires, from making from time to time contributions to the support and maintenance of her family, either from her own funds or property or from earnings obtained by her through private employment. It is reasonable to conclude that the funds sent by the deceased to his family from 1940 to 1943 were inadequate to support the wife and daughter, but the contributions, thrift and resourcefulness manifested by the wife (claimant here) supplemented the family budget, thereby enabling the family to live and own its home. These several factors were, no doubt, very beneficial in light of the acknowledged inability of the deceased to retain for any appreciable time a responsible position. The assigned reasons for the parties living apart, as reflected by the record, were employment sought by the husband which could not be obtained around Bartow but obtainable elsewhere, and the economic needs and requirements of the family; and we find no basis whatsoever for estrangement between the deceased and the claimant. The contention that the claimant was not dependent for support on the deceased certainly is not sustained by the testimony. Substantial evidence in the record sustains the findings of the chancellor on this controverted point.

The sum of $150.00 is allowed claimant's attorney for professional services rendered in this Court, according to stipu-

lation of the parties dated March 20, 1944. We fail to find error in the record.

Affirmed.

BUFORD, C. J., TERRELL and ADAMS, JJ., concur.