100 So.2d 177 (1958)
Waymon SOLOMON, Appellant,
v.
Mary DAVIS, also known as Mary Ball, Appellee.
Supreme Court of Florida.
February 5, 1958.
Rehearing Denied February 28, 1958.
Clarence J. Stokes, Sr., Sarasota, for appellant.
Williams, Parker, Harrison & Dietz, Sarasota, for appellee.
DREW, Justice.
The appellant Solomon, plaintiff in the court below, instituted a proceeding under *178 Section 222.10, Florida Statutes, F.S.A., to attack the homestead character of property owned by the appellee, Mary Davis, and claimed by her to be exempt from levy pursuant to Art. X, Sec. 1, Florida Constitution F.S.A. Following trial before the chancellor, a final decree was entered for appellee, finding her to be the head of a family residing upon the property in question and adjudicating the lot upon which the dwelling house was located to be her homestead under the constitutional provision cited, and exempt from levy of execution to satisfy the lien of the appellant, a judgment creditor.
In this appeal from the final decree, the record reflects no material dispute in the evidence upon the central issue. The appellee acquired and made her home upon the subject property in 1925. She then married her present husband, Tom Davis, and since their marriage they have lived together in the home. Both have been continuously employed, earning approximately equal salaries. For most of the past twelve years the appellee's minor grandniece and nephew have been members of the household. According to the testimony, their care and control was undertaken by appellee alone, and, although she has never formally adopted them, she has assumed the whole burden of their support, maintenance and control. Her entire income together with accrued savings is alleged to have been expended for this purpose and for her own necessities, her husband using his money only to purchase and operate an automobile, pay the household telephone bill, acquire properties, and otherwise support himself.
From these facts the court concluded that appellee "is the matriarch of the household * * *. Her household would exist as a family unit, regardless of her marital status, and regardless of the presence or absence of a husband in the home. * * * The equities of the case justify a liberal application of the principle involved * * * from the viewpoint of the public purpose to be served by a recognition of the existence of a family relationship with headship in the really dominant leader of the family group, even though such recognition is at variance with the preconceived traditions of headship in the male of the species."
A homestead claim can, of course, be based upon headship of a family in fact as well as a family in law. Cases cited, Vol. 2, p. 24, University of Florida Law Review, Crosby and Miller, Our Legal Chameleon. The difficulty in the present case, however, lies in determining which of the two basic alternative tests shall receive emphasis in defining the particular family relationship, "(1) the legal duty to maintain arising out of the family relationship at law, and (2) continuing communal living by at least two individuals under such circumstances that one is recognized as the person in charge." Crosby and Miller, supra.
The court below recognized at the outset a presumption that where married people live together in a common home, the husband is the head of the family. Bigelow v. Dunphe, 143 Fla. 603, 197 So. 328; Id., 144 Fla. 330, 198 So. 13. Cf. Frank v. Frank, Fla., 75 So.2d 282; Ripley v. Ewell, Fla., 61 So.2d 420; Sec. 708.03, Florida Statutes, F.S.A. In view of the widespread applicability of this principle throughout our law, there would be little doubt that in the circumstances of the case at bar the appellee's husband would have been deemed the head of the family when he and appellee assumed the normal marital relationship in spite of the fact that she continued to work and they lived upon her separate property. See De Jonge v. Wayne, Fla., 76 So.2d 273. It is settled that factual dependency is not the sole test of family headship. Caro v. Caro, 45 Fla. 203, 34 So. 309; De Cottes v. Clarkson, 43 Fla. 1, 29 So. 442. Further, the parties' vigorous assertions that the husband did not in fact "support" the wife, because he spent his money for items other than her necessities, has little weight, particularly where the evidence indicates that many of his expenditures benefitted her either directly or indirectly. *179 And such testimony, when subjected to careful analysis, might logically be brought within the rule that the parties cannot stipulate as to family headship. Anderson v. Anderson, Fla., 44 So.2d 652.
Perhaps for the latter reason the rule of "personal authority and responsibility" has been used largely to determine family headship where a family in law does not exist. Shambow v. Shambow, 153 Fla. 760, 15 So.2d 836. "When the natural relation of husband and wife or parent and child * * * does not exist, the relation should be one in which an established and continuing personal authority, responsibility, and obligation actually rests upon one as `the head of a family' for the welfare of the others who, in law, should, or in fact, do, recognize and observe a family relation to the one as `the head of a family'." Dania Bank v. Wilson & Toomer Fertilizer Co., 127 Fla. 45, 172 So. 476, 479; Whidden v. Abbott, 124 Fla. 293, 168 So. 253; Johns v. Bowden, 68 Fla. 32, 66 So. 155.
The last cited decision makes it equally clear, as recognized in the opinion of the court in this case, that for purposes of acquiring homestead privileges there cannot be two heads of a single family. "To constitute a `head of a family' there must be at least two persons who live together in the relation of one family, and one of them must be `the head' of that `family'." Johns v. Bowden, supra, 66 So. at page 159. (Emphasis supplied.) The appellee's position, then, would have been untenable prior to the addition of her two minor relatives to the household. The question now presented is whether her assumption of their care and maintenance in the home which was her separate property, in the face of her husband's avowed intent to have no share in such care, could eliminate her primary legal family relationship with her husband, with whom she continued to live amicably. It was the opinion of the chancellor that "Except for the anomaly of declaring a married woman with a self-supporting husband to be the head of a family of which he is a part, no legal impediment exists which would inhibit the Court in sustaining her position." But we find no basis in the record for any contention that the husband in this case did in fact "recognize and observe a * * * relation to [his wife] as `the head of a family'" of which he was a member. Dania Bank v. Wilson & Toomer Fertilizer Co., supra. It is apparent that he is then left in a truly anomalous position.
While a wife can certainly be the head of a family for purposes of acquiring homestead privileges and exemptions if the facts substantiate her claim (Bigelow v. Dunphe, supra; Anderson v. Anderson, supra), we find no case in which an ablebodied, continuously employed husband has been found to have abdicated his presumptive position as head of the family, where the primary family relationship of husband and wife remains intact with all the attendant duties and obligations thereby imposed upon him under our law. See F.S. § 708.10, F.S.A.; Contractors Contract NOY5948 v. Morris, 154 Fla. 497, 18 So.2d 247; Pollack v. Pollack, 159 Fla. 224, 31 So.2d 253; McRae v. McRae, Fla., 52 So.2d 908.
The equities of the cause are indeed moving in any situation where a home will in fact be disrupted by forced sale, but there are limitations inherent in the simple language of the constitutional provision itself: "A homestead * * * owned by the head of a family residing in this state * * * shall be exempt from forced sale * * *" Art. X, Sec. 1, Florida Constitution. Plainly, family headship and ownership of the home property must coincide in one person, and where property is subjected to obvious homestead use but family headship rests in one who has no beneficial interest in such property and consequently cannot claim homestead immunity, then the legal duties and obligations imposed upon the head of a family in law would seem to take the place of the benefits denied such a family under the *180 constitutional provision relating to homesteads. The application of the plain language of the provision does not, of course, need any such rationale by a reviewing court, but it serves to illustrate the point that equities alone cannot control the disposition of a homestead claim.
The judgment is reversed and the cause remanded for the entry of a decree for appellant.
THOMAS, HOBSON and ROBERTS, JJ., concur.
TERRELL, C.J., dissents.