139 So.2d 192 (1962)
Gwendolyn BARNETT, Appellant,
v.
PAN AMERICAN SURETY COMPANY, a Florida Corporation, Appellee.
No. 61-237.
District Court of Appeal of Florida. Third District.
March 27, 1962.
Rehearing Denied April 12, 1962.
*193 Simon & Rosen, Miami, for appellant.
George M. Heller, Miami, for appellee.
Before PEARSON, TILLMAN, C.J., and CARROLL and BARKDULL, JJ.
PEARSON, TILLMAN, Chief Judge.
This appeal comes to us upon a stipulated statement as follows:
"1. On or about September 14, 1959, Pan American Surety Company recovered a judgment in its favor and against Gwendolyn Barnett in the sum of $3,780.00, in the Civil Court of Record in and for Dade County, Florida, being Case No. 59-3355. The suit was originally brought against her by Dade County, Florida, by reason of a subdivision agreement and bond on which she had defaulted. The bonding company, Pan American Surety Company, paid the County of Dade and took judgment against Gwendolyn Barnett.
"2. On or about the same date, September 14, 1959, a Writ of Execution was issued and was returned unsatisfied save and except for the sum of $102.00, which was paid to the Pan American Surety Company.
"3. When the Writ of Execution issued, Gwendolyn Barnett executed an Affidavit of Exemption claiming to be the head of a family pursuant to Article X, Section 1, of the Constitution of the State of Florida, and claiming the right of homestead exemption to the home in which she lived with her two minor children as below set forth, the sum of $1,000.00, and claiming further that her salary was exempt from the claims of creditors
"4. Her marital status at that time was as follows: On or about January 2, 1946, Gwendolyn Barnett married George Robert Barnett, and was continually married to him until May 6, 1959, when the Circuit Court of the Eleventh Judicial Circuit in and for Dade County, Florida, entered a Final Decree of Divorce granting Gwendolyn Barnett a divorce, a vinculo matrimonii, from George Robert Barnett. No provision was made in the Final Decree of Divorce relative to custody or support of the children.
"5. Of this marriage, there were born two children, William Sawyer Barnett, and Mary Elizabeth Barnett, ages 8 and 7, who after the divorce remained and are now in the custody and care of Gwendolyn Barnett, their mother.
"6. Prior to the divorce aforesaid, George Robert Barnett had left the jurisdiction of the State of Florida to take up residence in Ohio. A support order under the Uniform Support Act was entered against him in Ohio due to the efforts of the state's attorney's office of Dade County, Florida, upon application of Gwendolyn Barnett. This support order required him to pay $15.00 weekly to Gwendolyn Barnett for the support of their children. He is a high school teacher in Ohio. Only one payment had been made under this support order at the time of final hearing herein, and apparently neither Gwendolyn Barnett nor the state's attorney's office in Dade County was aware that the order had been entered by the Ohio *194 court prior to the aforesaid hearing. The Ohio court order is valid and still in full force and effect. Gwendolyn Barnett and her two minor children, during all times pertinent to this matter, lived in a house, title to which was held by Gwendolyn Barnett in fee simple, at 2545 N.W. 46th Street, Miami, Florida. At all times pertinent hereto, Gwendolyn Barnett has been gainfully employed as a school teacher in the Dade County Public School System. She is a contributor to the teacher's retirement fund and has to her credit in that fund approximately $4,000.00. She has used her income from her employment for her support and the support of her two minor children.
"7. On November 25, 1959, the Pan American Surety Company filed its suit against Gwendolyn Barnett, and by amendment thereto allowed by the Court prayed for a Declaratory Decree, and that the Court, in addition to other relief, declare that Gwendolyn Barnett is not the head of a family and is not entitled to homestead exemption and the other exemptions reserved to such persons by the Constitution and by statutes provided.
"8. During the pendency of the litigation and prior to the final hearing, Gwendolyn Barnett did marry James L. Cherry on June 3, 1960. She continued to be employed in the Dade County Public School System and no change in the ownership of the home in which she is living with her two minor children resulted. The new husband has moved into the said home. No other evidence was offered by appellant relative to her new marriage status.
"9. On March 30, 1961, the Circuit Court in and for the Eleventh Judicial Circuit in and for Dade County, Florida entered its Final Decree in which it held `that the Defendant, Gwendolyn Barnett, also known as Gwendolyn Barnett Cherry, is not the head of a family as contemplated by Article X, Section 1 of the Florida Constitution, nor entitled to the exemptions allowed by law to such persons.'"
The appeal is by defendant, Gwendolyn Barnett, who urges that the real property acquired and retained the status of a homestead and is therefore exempt from levy under Article X, Section 1, of the Florida Constitution, F.S.A. The appellee, Pan American Surety Company, has filed cross assignments of error urging that the court erred in refusing appellee's motion for attorney's fees and certain costs. We affirm.
The appellee-surety company claims that the lien of its judgment came into being sometime prior to September 14, 1959, when the stipulated statements says a writ of execution was issued and returned unsatisfied except for the payment of $102. At that time the appellant, Gwendolyn Barnett, made an affidavit claiming to be the head of a family in order to receive the benefit of the constitutional exemption.
This was the situation at the time appellee filed its complaint seeking a declaration as to whether Gwendolyn Barnett was then the head of a family. During the pendency of the suit Mrs. Barnett remarried and became Mrs. James L. Cherry. The decree recites that evidence of this fact was before the chancellor and was a basis for his finding that Mrs. Cherry "* * * is not the head of a family as contemplated by Article X, Section 1 of the Florida Constitution * * *" The essential question is whether the court correctly determined that Mrs. Cherry was not entitled at the time of the final decree to the exemption from levy on the real property upon which she and her children were then living.
The chancellor correctly found that there could be only one head of a family. Solomon v. Davis, Fla. 1958, 100 So.2d 177, 67 A.L.R.2d 774. While it is true that a married woman may be the head of a family, Anderson v. Anderson, Fla. 1950, 44 So.2d 652, there is a presumption that where a married couple live together in a common *195 home, the husband is the head of the family, Solomon v. Davis, supra. The stipulated statement does not contain evidence sufficient to require us to hold that the chancellor committed error in finding that appellant's husband occupied the position established by the presumption.
The appellant urges that the chancellor was in error because the evidence demonstrated that there were in fact two families; that is, the appellant and her husband, and the appellant and her children by her first marriage. We must reject this contention because it carries with it the connotation of a divided household and divided authority which is not in keeping with the idea of a family unit. The home and family as a unit is too basic to our way of life for the courts to advocate a principle which might disrupt it. The idea of one home and two families is not discussed as a possibility in the opinion in Solomon v. Davis, supra, but we think that it was necessarily rejected by the reasoning of that opinion. There the wife claimed to be entitled to the exemption because her grandniece and nephew, whose support, maintenance, and control she had assumed entirely and apart from her husband, lived with her in the home.
We therefore conclude that the chancellor has not been shown to have been in error when he found that at the time of the decree the plaintiff-appellant, Gwendolyn Barnett Cherry, was not the head of a family.
As previously mentioned, the appellee, Pan American Surety Company, has filed cross assignments directed to the court's denial of its motion for the allowance of certain costs and an attorney's fee claimed in the action. The judgment as to costs is affirmed upon authority of the rule stated in Emigh v. Tinter, Fla.App. 1959, 108 So.2d 913, because the record does not show that the costs incurred by appellee were for a useful purpose.
The claim for an attorney's fee was based upon a contract contained in an application for a bond. The bond was the subject of a prior action by the surety company against Gwendolyn Barnett as principal and resulted in the judgment which the surety company sought to execute on the real property concerned. The promise was to pay any attorney's fee "* * * which the company shall or may at any time, sustain, or incur by reason or in consequence of having executed the Bond herein applied for * * *" Because the appellee has failed to demonstrate that the suit when instituted was a necessary adjunct of the enforcement of a liability under the bond, we do not find the chancellor to have committed error in his denial of plaintiff's motion for an attorney's fee. Further, we need not decide whether equity will enforce such a contract because it appears from the record that this suit was instituted prior to the time that the appellant married her present husband, and at a time when it appears from the record that she was entitled to the exemption.
Affirmed.