HERSEY, Judge.
The proceedings which ripened into this appeal were initiated by a petition filed in the probate division of the. circuit court seeking a determination as to whether property constituted a homestead for purposes of descent and distribution. The trial court answered this query in the negative.
Edwin and Pauline Pendrys were divorced in 1977. The Illinois court approved a settlement agreement providing for joint custody of two minor sons with Edwin agreeing to furnish their full support and maintenance. In January of 1982, Timothy, age 16, became uncomfortable living in *403 Illinois with his father and came to Boca Raton, Florida, to live with his mother in the home awarded to her from the divorce. Timothy obtained a Florida driver’s license and enrolled in school. Five weeks later Pauline was hospitalized. It was decided that Timothy would return to his father’s home in Illinois. There is some evidence that Timothy’s absence from Florida was a temporary expedient, awaiting only his mother’s recovery from illness. There is no evidence to the contrary. Pauline Pen-drys died approximately one month later leaving a will which devised the residential real property to a sister, appellee, Barbara Ann Szymber. The personal representative filed the petition for guidance to which we referred initially.
The issues are whether homestead status attached to the residence by virtue of its occupancy by mother and son and, if so, whether that status was abandoned by Timothy’s return to Illinois. If homestead status attached and was hot abandoned then the devise to decedent’s sister is constitutionally infirm and therefore invalid. Art. X, § 4(c), Fla. Const. (1968). We recently had occasion to analyze this provision and its purpose in In Re: Estate of Melisi, 440 So.2d 584 (Fla. 4th DCA 1983). There we reminded that “[i]n order for property to [be classified] as homestead, the property must be the residence of either the owner or the owner’s family and the owner must be the ‘head of a family.’ ” Pauline Pendrys was, at the time of her death, the “owner” of the property sought to be classified as homestead. The question is whether she qualified as head of a family. We observe parenthetically that Edwin Pendrys did not own any real property in Florida nor did he reside here so that the possibility of dual homesteads is avoided by the facts of this ease.
Our inquiry is guided by the observation in Holden v. Estate of Garner, 420 So.2d 1082, 1083 (Fla.1982) that:
In determining whether a person is the head of a family, Florida courts have long used a test which requires a showing of either: (1) a legal duty to support which arises out of a family relationship, or (2) continuing communal living by at least two individuals under such circumstances that one is regarded as in charge. Killian v. Lawson, 387 So.2d 960 (Fla.1980); Solomon v. Davis, 100 So.2d 177 (Fla.1958); Beck v. Wylie, 60 So.2d 190 (Fla.1952); Heard v. Mathis, 344 So.2d 651 (Fla. 1st DCA 1977); Brown v. Hutch, 156 So.2d 683 (Fla. 2d DCA 1963). While the former requirement looks to a “family in law,” the latter looks to a “family in fact,” which arises out of a moral obligation to support. Smith v. Stewart, 390 So.2d 178 (Fla. 4th DCA 1980).
When marriages were “ ‘til death us do part” application of the head of the family test was reasonably uneventful. In these modern times in which relationships appear to be transitory the following from Nationwide Financial Corp. of Colorado v. Thompson, 400 So.2d 559 (Fla. 1st DCA 1981) succinctly portrays the difficulties inherent in any attempt to apply that test:
Since the homestead exemption for the “head of a family” has been a part of the constitution, however, separate living arrangements, dissolutions and single parentage have become a much more frequent occurrence. It is common for more than one member of the family to provide family income. When the “family” is not a cohesive unit or when only one parent provides the income, it is no easy task to determine who is the “head” of the family, and the courts have been reluctant to adhere to any hard and fast rule in making that determination. See, e.g., Osceola Fertilizer v. Sauls, 98 Fla. 339, 123 So. 780 (1929); Barnett Bank of Cocoa v. Osborne, 349 So.2d 223 (Fla. 4th DCA 1977); Estate of Deem v. Shinn, 297 So.2d 611 (Fla. 4th DCA 1974); Vandiver v. Vincent, 139 So.2d 704 (Fla. 2d DCA 1962).
The evidence shows that mother and minor child lived in a house in Florida which mother owned. It may be assumed that the mother was in control. In that posture they constituted a family in fact. *404 Thus the property took on the status of a homestead.
The remaining question is whether that status was abandoned. We hold that it was not. Pauline Pendrys, except for being hospitalized, owned, resided in and (there being no evidence presented to the contrary) intended to continue to live in the residence and provide a home for her minor son. He, in turn, involuntarily removed himself from Florida awaiting his mother’s hoped-for recovery. On these facts it is clear that no abandonment took place.
The result we reach, reversing the lower court, does not evolve out of a reweighing of the evidence or inquiry into its sufficiency. The facts are substantially uncontro-verted. We simply determine that, in a close case, the trial court applied the incorrect rule of law. See Oceanic International Corp. v. Lantana Boatyard, 402 So.2d 507 (Fla. 4th DCA 1981).
We therefore reverse and remand for further appropriate proceedings.
REVERSED AND REMANDED.
DOWNEY and BERANEK, JJ., concur.