**THE STATE OF FLORIDA, THE TAXPAYERS, PROPERTY OWN-ERS and CITIZENS OF PINELLAS COUNTY, including NON-RESIDENTS owning property or subject to taxation therein, v. PINELLAS COUNTY, a political subdivision of State of Florida.**

36 So. (2nd) 216                                          June Term, 1948
June 11, 1948                                                  En Banc

*Chester B. McMullen,* State Attorney, and *Don Geiger,* Assistant State Attorney, for appellants.

*John C. Blocker,* for appellee.

TERRELL, J.:

The legislature enacted Chapter 24,819, Acts of 1947, authorizing Pinellas County to acquire sites, offices and buildings outside the county seat for the purpose of housing officers and agencies of the County, to pay the cost thereof from moneys apportioned to the County under the provisions of section 550.13, Florida Statutes 1941, as amended and supplemented, and from fees, commissions and charges which we shall later discuss, to issue revenue bonds payable from the funds so designated, and to define the duties and powers of the county officers in relation to said county buildings. This appeal is from a final decree validating an issue of "County Building Revenue Anticipation Bonds," herein after referred to as "County bonds," proposed and issued for the purpose of acquiring lands and constructing a building to be known as the County Building as contemplated by Chapter 24,819.

It is first contended that the title to Chapter 24,819, is violative of section 16, Article III of the Constitution in that it attempts to legislate on more than one subject matter.

There is no merit to this contention. The title is in essence embraced in the first paragraph of this opinion and, as therein shown, the sole purpose of the Act is to acquire lands and construct a county building at some point in the county outside the county seat. The Act shows on its face that the county has been expending large sums annually in rents and betterment to house county officers and agencies at St. Petersburg in order that they may more adequately serve the needs of the people and the purpose for which they were created. We find nothing in the title or body of the act that points to any other objective.

It is true that Section 6 of Chapter 24,819 contains a provision authorizing the County Commissioners to redistrict Justice of the Peace districts in the area, affected so that the dividing line may run through the building in such a way as to enable them to have and maintain offices therein. It is also true that Section 21, Article V of the Constitution provides the method for creating and defining the boundaries of Justice of the Peace districts. It may be that this method is exclusive but it is not necessary to decide that question at this time, because no Justice of the Peace is here complaining. When that contingency confronts us, if we conclude that Section 21 of Article V is controlling, the invalid part of Section 6 may be severed as provided in Section 5 and the balance of the act permitted to stand.

It is next contended that Chapter 24,819 is violative of Section 17, Article III of the Constitution, in that the mandatory requirements for its passage through the legislature were not observed.

A complete transcript of the record of its passage through both houses of the legislature is properly authenticated and made a part of the transcript. It reveals that the proposed act was read by its title on first reading, and its reading on three separate days was dispensed with by two-thirds of the members present, that on second reading two-thirds of the members present waived the requirement that it be read by sections and that it was read in full on final passage. The record also shows that the bill was passed by yea and nay vote which was entered in the journal and that it was duly

signed by the presiding officer and secretary of each house. Appellants point out no provision of Section 17, Article III, which was not complied with and our search of the legislative journal reveals none.

It is next contended that Chapter 24,819 violates Section 20, Article III of the Constitution in that it is a local law and attempts to regulate the duties and fees of county officers which may be done only by general law.

As already pointed out the main purpose of Chapter 24,819 is to authorize the construction of a county building outside the county seat for the accommodation of county officers and agencies. Such duties as are imposed by it on the county officers are incidental to the main purpose of the act and do not violate the constitution. Jackson Lumber Co. v. Walton County, 95 Fla. 632, 116 So. 771. We find nothing in the act which regulates the fees or duties of county officers so as to render it invalid.

It is next contended that Chapter 24,819 violates Section 4, Article VIII of the Constitution in that it is a local law and attempts to remove the county seat of Pinellas County from Clearwater to St. Petersburg which can be done only by general law.

It is sufficient answer to this contention to say that Section 3 of the Act in terms disclaims any such purpose and a careful perusal of the act does not reveal a word that could by fair implication be construed as an attempted removal of the county seat. It is shown that a very large metropolitan population was concentrated around St. Petersburg and that the plan proposed would result in a very material reduction in the cost of serving this population.

It is next contended that Chapter 24,819 is violative of Section 6, Article IX of the Constitution in that it proposes, absent an approving vote of the freeholders, to issue county bonds for the construction of a county building and to service said bonds with (1) moneys apportioned to Pinellas County under the provisions of Section 550.13, Florida Statutes 1941, as amended, and (2) from excess fees collected by the county officers, and placed in what is commonly known as the "County Officers Excess Fee Fund."

Section 2 of Chapter 24,819 provides that "such revenue anticipation bonds shall be payable solely and only from the portion of such fees, commissions and charges and such moneys apportioned and distributable as aforesaid, as may be recited in such resolution and it shall be plainly stated on the face of each such bond that same does not constitute an indebtedness of said county and that no ad valorem taxes shall ever be required to be levied for the payment of either principal or interest." The resolution of the county commissioners contains substantially the same language and the face of such bond not only contains similar language but the further guarranty from the County Commissioners that a special fund will be provided from the two sources designated to service the bonds. Nothing in the act under review or the proceedings leading to the issuance of the bonds could be construed as requiring that said bonds be serviced by the imposition of ad valorem or other county taxes.

The question of whether or not funds raised under Section 550.13, Florida Statutes 1941, may be used to service bonds for a project of this kind was foreclosed by Posey v. Wakulla County, 148 Fla. 115, 3 So. (2nd) 799, and Prescott v. Board of Public Instruction of Hardee County, 159 Fla. 663, 32 So. (2nd) 731. We have not yet been confronted with a case in which excess fees received by the county from the County Officers Excess Fee Fund, may be appropriated to service bonds in the manner proposed, but such funds represent collections for services rendered by the County Officers and do not possess the attributes of a tax. They do not arise unless the fees imposed surpass the maximum salaries of the county offices. In that event they are subject to appropriation by the legislature.

Here it is proposed to appropriate such excess fees as accumulate in Pinellas County to service bonds for constructing a county building at St. Petersburg to extend the services of various county officers and agencies in order that they may be more economical and expeditiously performed. It is shown that all such services are county governmental services. There is no merit to the contention that said funds cannot be appropriated for an anticipated service. Pinellas County v.

Herrick, 123 Fla. 619, 167 So. 386; Trudnak v. Gustafson, et al., 133 Fla. 834, 183 So. 494.

It is contended that the resolution of the County Commissioners for issuance of the bonds not only binds the funds raised under Section 550.13 and the county officers excess fees to service them, but provides in addition that they may be serviced by "fees, commissions, charges and moneys received by said county and regularly deposited in the fines and forfeiture fund." It is true that the original bond resolution carried the latter provision but the record discloses that it was stricken, the Chancellor eliminated it and· the validating decree recognized the two funds discussed in this opinion as the sole source for servicing said bonds. Such was the theory on which the appeal was brought to this court. Neither counsel contended that the bonds could be serviced from any other source and the bond form in terms provides that "this bond, including interest thereon, is payable solely from said fund and does not constitute an indebtedness of the said county, nor shall ad valorem taxes ever be required to be levied for the payment of either interest on or principal of this bond." It necessarily follows that on this point the only funds that may be used to service the bonds are those raised under Section 550.13 and the County Officers Excess Fees and we so hold.

It is last contended that Chapter 24,819 violates Section 4 of Article XVI of the Constitution in that it requires all county officers to keep their offices and their official records at St. Petersburg rather than Clearwater which is the County Seat of the County.

We think this contention is equally without merit. Chapter 24,819 disclaims any purpose to remove county officers or records to St. Petersburg in a manner to violate the constitution. Its purpose is to provide a county building at St. Petersburg where certain county agencies now operating there and certain county officers may offer an auxiliary service to the people of the county where all these agencies and offices may be collected under the same roof in the interest of economy and efficiency. The nature of the service rendered is governmental and we find nothing in the constitution inhibiting the

construction of a building by the county in the manner proposed. The mechanics, population and physical conditions of the county generally support the act.

Other questions argued have been considered but we find no reversible error so the judgment appealed from is affirmed.

Affirmed.

CHAPMAN and SEBRING, JJ., concur.

HOBSON, J., concurs specially.

THOMAS, C. J., ADAMS and BARNS, JJ., dissent.

HOBSON, J., concurring specially:

I not only agree fully with Mr. Justice Terrell's opinion in this case and his treatment of the contention that Chapter 24,819, Acts of 1947, is violative of Section 6, Article IX, of the Florida Constitution, but I wish to make it very clear that I am of the opinion that said Section 6, Article IX, of our Constitution is not and cannot be applicable in connection with obligations or bonds of the character of those proposed bonds which are before this Court in the instant case.

The provision of Section 6, Article IX, of the Florida Constitution which requires a majority vote of the free-holders before any county, district or municipality of the State of Florida shall have power to issue bonds has reference only to bonds which are to be serviced by ad valorem taxation (i.e. a direct tax upon real property). It is true that the word "bonds" is used but said word must be construed in connection with the remaining language of the section and it is particularly true that some definite meaning must be given to the word "free-holders." This word connotes landowners and, to my mind, clearly furnishes the key to a proper construction and interpretation of said Section 6, Article IX of our Constitution. The obvious purpose of the framers of this section was to make sure that bonds which would be serviced by levying and assessing taxes against real property should not be issued unless the free-holders, those who were ultimately to be charged with the payment of such obligations, should approve the creation and issuance of such obligations. By no stretch of the imagination can it be said that the bonds contemplated by Chapter 24,819, Acts of 1947, are to be

serviced by ad valorem taxation. In the light of this writer's conception of the proper construction and interpretation to be given Section 6, Article IX of the Constitution of Florida, there is no place here for the contention that these bonds are to be issued in violation thereof.

BARNS, J., dissenting:

The Resolution of the County Commissioners authorizing the County bonds involved here is in part as follows:

"NOW, THEREFORE, Be It and It Is Hereby Resolved and Ordered by the Board of County Commissioners of Pinellas County, Florida, as follows:

"SECTION 1. That (1) the moneys apportioned and distributed to Pinellas County under the provisions of Section 550.13 of the Florida Statutes, as amended and supplemented; (2) the fees, commission, charges and moneys received by said county and regularly deposited in the *Fines and Forfeiture Funds;* and (3) excess fees received by said county from county officials are, in the order named and to the extent hereinafter provided hereby pledged to the "County Building Revenue Anticipation Bond Fund," hereinafter created for the purpose of paying the interest on the principal of the County Building Revenue Anticipation Bonds, as herein authorized. (Italics supplied).

"SECTION 2. That in anticipation of the collection of said fees, commissions, charges and moneys apportioned and distributable as referred to in Section 1 hereof and for the purpose of paying the cost of acquiring a suitable office building and a site therefor as referred to in the preamble hereof, there are hereby authorized to be issued the negotiable County Building Revenue Anticipation Bonds of Pinellas County, Florida, in the principal amount of $400,000.00."

Section 6 of Article IX of the Florida Constitution prescribes:

" . . . the Counties, Districts or Municipalities of the State of Florida shall have power to issue bonds only after the same shall have been approved by a majority of the votes cast in an election in which a majority of the freeholders who are qualified electors residing in such Counties, Districts, or Munici-

palities shall participate, to be held in the manner to be prescribed by law; ... "

The decision in Leon County v. State, in a case similar to this was as follows:

Section 2384, C. G. L. (now Sec. 135.01, F.S. 1941, F.S.A.) authorized the County Commissioners of any county for not more than five years to levy a five mill tax per annum to building county jails and courthouses.

The County Commissioners of Leon County passed a resolution for such purposes and brought proceedings to have validated the issuance of bonds wherein the proceeds of this five mill tax were pledged for their payment and upon an appeal of a decree denying validation this Court in construing the power to issue such bonds found that such act came within the prohibition of Section 6 of Article IX of the Constitution (supra) and stated:

"Any contractual device for the present funding of tax revenues contemplated to be raised or made available for reimbursement in future years, contrived to be issued as enforceable legal security to the obligee, or his assignee, by means of which such obligee or his assignee will acquire a legal or equitable right to coerce by judicial processes the repayment of a sum of money advanced on the strength thereof, together with interest for the hire of the amount advanced, however calculated or provided to be paid upon the sums so involved, it is contemplation of Amended Section 6 of Article IX of the Constitution of Florida a "bond" and within the purview of the specific provisions and limitations of that section as to issuance of "bonds." This is so, only because any scheme of public financing, directly or indirectly, immediately or contingently calculated to obligate the future taxing power of the obligor, is within the scope of the Florida constitutional limitation on the issuance of "bonds," but because such contemplated obligation of the powers of future taxation can no more be afterwards repudiated as forming no part of the present transaction for a funding of the future public resources, than a mortgage executed as security for a note can be subsequently disregarded as forming no part of the contractual arrangement evidenced by the negotiation of the

same."—The County of Leon v. State, 122 Fla. 505 507-8, 165 So. 666.

"The purpose of Amended Section 6 of Article IX of the Constitution was to impose a constitutional limitation on county, district and municipal financial operations in so far as the same might involve any form of direct or indirect contractual obligation of anticipated future tax revenues to presently *raise funds* for county, municipal or district purposes, that would have to be repaid in future with interest, to the parties advancing same in anticipation of a redemption of the contractual obligation so incurred. The limitation so imposed must be construed to mean that no financial obligation in the form of a present funding of future tax anticipation shall be made, whether general or limited, direct or contingent in form, unless the assumption of the obligation of same be first approved by a favorable vote of a majority of the county, municipal or district freeholders as provided for in said constitutional section and article."

This court held in this Leon County case that such bonds could not be validated until same were approved at an election and pointed out the avenue for procuring it, to-wit: Chap. 14,715, Acts 1931 (now contained in Section 103.02-103.08, F.S. 1941, F.S.A.).

The circuit judge by his validating decree makes reference to the race track tax revenue of the county and the excess fee fund of the county only and is silent as to the fine and forfeiture fund.

It is my conclusion that the proposed Pinellas County bonds come within the prohibition of Section 6, Article IX of the Constitution, prohibiting the issuance of such bonds until approved by popular election.

THOMAS, C.J., and ADAMS, J., concur.