89 So.2d 607 (1956)
STATE of Florida, Appellant,
v.
COUNTY OF PALM BEACH, Florida, Appellee.
Supreme Court of Florida. En Banc.
September 21, 1956.
*608 Phil D. O'Connell, West Palm Beach, for appellant.
Harry A. Johnston and Henry F. Lilienthal, West Palm Beach, for appellee.
TERRELL, Justice.
Pursuant to Chapter 75, Florida Statutes 1953, F.S.A., Palm Beach County petitioned the Circuit Court, Fifteenth Judicial Circuit, to validate certificates of indebtedness, aggregating $750,000 for the purpose of constructing a County Office Building, a Children's Home and additions, extensions and improvements to the Courthouse Annex Building and for furnishing and equipping the Courthouse in Palm Beach County. Said construction and furnishing to be paid for with the proceeds of a tax of not exceeding five mills on all taxable property in the county levied pursuant to Sec. 135.01, Florida Statutes 1953, F.S.A., for not exceeding fifteen years.
The State of Florida answered the petition alleging: (1) Petitioner is without lawful authority to impose the tax for the purposes expressed in the petition; (2) the pledge of the five mills tax levy for payment of the principal and interest on the certificates of indebtedness brings the "bonds" within the meaning of Section 6, Article IX of the Constitution, F.S.A. requiring that they be approved by a majority of the qualified electors who are freeholders; (3) petitioner is without authority to pledge the proceeds from the five mills tax imposed for financing the improvements enumerated in the petition. On the issues made by the petition and the answer the court entered final decree validating the certificates of indebtedness. This appeal is from the validating decree.
There is no controversy about the facts, the procedure leading up to issuance of the certificates of indebtedness, the statement of the case or the questions involved. Two points are raised for determination but they are treated as one. In our view the only point in the case is whether or not under Chapter 135, Florida Statutes 1953, F.S.A., Palm Beach County is authorized to issue certificates of indebtedness for the construction of a County Office Building, a Children's Home, and additions, extensions and improvements to the Courthouse Annex Building and for furnishing and equipping the County Courthouse in Palm Beach County, absent an approving vote of the taxpayer freeholders as required by Section 6, Article IX of the Constitution.
Prior to the enactment of Chapter 25469, Acts of 1949, this question might have required a negative answer as to the County Office Building and the Children's Home. Provision for other improvements listed would have been concluded by Leon County v. State, 122 Fla. 505, 165 So. 666; Tapers v. Pichard, 124 Fla. 549, 169 So. 39; Posey v. Wakulla County, 148 Fla. 115, 3 So.2d 799; State v. Pinellas County, 160 Fla. 549, 36 So.2d 216; State v. Florida State Improvement Commission, Fla., 48 So.2d 165; *609 City of Jacksonville v. Nichols Engineering and Research Corp., Fla., 49 So.2d 529, and perhaps others. We have not overlooked State v. Florida State Improvement Commission, Fla., 60 So.2d 747. The theory on which these cases were decided was that Section 6, Article IX of the Constitution was not intended to inhibit governmental entities from entering into contracts for current governmental needs and requirements when done in due course of their authorized budgetary administration of public affairs.
Prior to the enactment of Chapter 25469, Acts of 1949, the pertinent part of Sec. 135.01, Florida Statutes 1941, provided, "to erect or repair any courthouse or jail or erect an addition or additions to any courthouse or jail". As amended by Chapter 25469, said provision reads, "to erect or repair any courthouse, jail, or other county building, erect an addition or additions to any courthouse, jail or other county building". The 1949 amendment also extended the tax levy from five to fifteen years but that is not material at this time. The material part to this case is what was comprehended by the words emphasized, "or other county building".
The petition to validate contemplated certificates of indebtedness for a "County Office Building, a Children's Home and additions, extensions and improvements to the Courthouse Annex Building, and for furnishing and equipping the County Courthouse in Palm Beach County." In view of the cases last cited, it would hardly be questioned that the certificates of indebtedness or their proceeds could be expended for "additions, extensions and improvements to the Courthouse Annex Building and for furnishing and equipping the County Courthouse in Palm Beach County." Three of these cases, Leon County v. State, Tapers v. Pichard and Posey v. Wakulla County, had to do with the construction of courthouses and jails under the act involved in this case or similar acts. State v. Pinellas County had to do with the construction of a county office building outside the county site and is persuasive only. State v. Florida State Improvement Commission, Fla., 48 So.2d 165, had to do with the construction of a county health center. We held that it was a current governmental need, essential to administration of county government. City of Jacksonville v. Nichols Engineering and Research Corp. had to do with certificates for essential municipal improvements which we held did not require an approving vote of the freeholder electors.
The resolution for issuing the certificates of indebtedness in this case refers to a former like petition of 1954 for the issuance of $1,100,000 of certificates of indebtedness for the construction of additions, extensions and improvements to Courthouse, Courthouse Annex and jail. Some of the same improvements mentioned were to be done by the present certificates of indebtedness. In both of these proceedings the County Commissioners followed the course pursued in Tapers v. Pichard, supra. Construction trust funds and sinking funds were set up for receiving and dispensing the funds derived from the certificates of indebtedness to provide the facilities listed.
Since we hold that the validity of the certificates of indebtedness to pay for additions, extensions and improvements to the Courthouse Annex Building and for furnishing and equipping the County Courthouse is concluded by the cases last cited, the County Office Building and the Children's Home are the only items of improvement whose legality remains in question. As to them, the first question is whether or not they may be considered as "other county buildings," essential to the administration of county government like a courthouse or jail as contemplated by Chapter 25469, Acts of 1949. This court knows that Palm Beach County is over 50 miles from east to west; that it is bounded on the east by the Atlantic Ocean and on the west by Lake Okeechobee; that most of its population lives on a strip of land about ten miles wide on east side of the county and a strip less than ten miles wide on the west side; that the vast area between these strips *610 is what is known as Everglades, fertile agricultural and grazing lands but sparsely populated. The people who own and cultivate these lands live in the populated areas east and west of them.
Approximately 27,000 of Palm Beach County's population live on the west side of the county and cultivate about 175,000 acres of the land referred to as Everglades. The County Office Building in question is designed to accommodate these people who live from 40 to 55 miles from the county site. The building is to contain offices for the following county officers and employees: County Welfare worker; Assistant County Agricultural Agent; Juvenile Counsellor; Veterans Service Officer; County Physician and members of County Health Department; Mosquito Control District; proposed sub-office for County Registrar; office where drivers' licenses may be sold (7,000 are sold in the area); automobile license office; proposed sub-office for Tax Collector; proposed sub-office for Clerk of the Circuit Court and in fact office space for deputies of all county officers.
Supporting the proposed Children's Home, the record discloses that it is designed to care for dependent, neglected and delinquent children who are under the jurisdiction of the Juvenile Court. The present home is 30 years old, has two dormitories, one for boys and one for girls, 6 years old and up. The number of children as to sex varies greatly. Present detention quarters for delinquents are very inadequate, making use of county jail for that purpose necessary; fire protection is inadequate. The Board of Visitors provided by statute has recommended provision of a modern functional Children's Home. The home receives children who are neglected and dependent on others than parents, children deserted by parents, and children whose parents are unfit, requiring county authorities to take them in custody to provide a more wholesome environment. The County Commissioners are at present placing about 20 children per month in private homes for lack of facilities and paying their expenses from county funds; present facilities are inadequate for the purpose but could be renovated and used to house employees of county hospital and county Old Folks' Home but could not be renovated to meet current needs for all the children requiring county care. Children under 6 years old are at present housed in a separate facility at cost of $600 per month to county; no facilities are presently available for separating age groups and County Commissioners feel impelled to meet recommendation of the Board of Visitors. All of these facts were placed in the record by the County Commissioners of Palm Beach County.
It is also shown that after the enactment of Chapter 25469, Acts of 1949, the people of Florida amended the State Constitution by adding thereto Section 50, Article V, having to do with the establishment and jurisdiction of juvenile courts. Thereafter in 1951, the legislature enacted Chapter 39, Florida Statutes, F.S.A., implementing Section 50, Article V of the State Constitution. Under this chapter juvenile courts were given exclusive original jurisdiction of dependent and delinquent children. But see State ex rel. Watson v. Rogers, Fla., 86 So.2d 645. This chapter prohibits placing a child in a common jail, unless a detention home is unavailable. The desired results of the special treatment to be given juvenile offenders under our statutes is certain to be lost if they are to be housed with adult criminals in common jails.
Chapter 416, Florida Statutes, F.S.A., authorizes counties to establish and maintain detention homes and schools for delinquent children. This chapter provides that "A detention home shall not be deemed to be, nor treated as a penal institution, but [as] a home." From the recited provisions of the Constitution and statutes, we are driven to the conclusion that the functions of a juvenile court are essential to the administration of county government, and that a detention home, called a "children's home," or by any other name, is essential to the operation of a juvenile court. Such *611 a detention home is equally essential to the proper functioning of a juvenile court, as a jail is to a court having criminal jurisdiction. The children who will occupy the home will, for the most part, be placed there under compulsion of court orders. The facility does not appear to be intended to serve a charitable purpose or to serve as an orphans' home, as the name might imply.
From this brief summary it is apparent that the County Office Building is a county facility designed to furnish accommodations to the people of the western part of Palm Beach County very much on the same pattern provided for the people of Pinellas County which we discussed and approved in State v. Pinellas County, supra. It is true that different means were provided for financing the Pinellas County project but when the legislature amended Section 135.01 by enactment of Chapter 25469, Acts of 1949, to include "other county buildings," it certainly must have contemplated such buildings as the County Office Building and the Children's Home in question. After being on the books 75 years applying only to courthouses and jails, the legislature amended it to include "other county buildings." We think the amendment must mean something more than window-dressing. The only logical conclusion is that it contemplated such improvements as are attempted here.
We have pointed out that the care and protection of juveniles under jurisdiction of the juvenile courts is by law made a function of the county government and requires facilities such as the Children's Home referred to in this opinion. Applying the rule of ejusdem generis, it is not unreasonable to assume that "other county buildings" would contemplate such facilities. They are among the necessities to administer county government and must be provided at county expense. Chapter 135 has been on the books many years. It was first enacted in 1883, Chapter 3421, Laws of Florida, and included only courthouses and jails. A fair assumption would be that the 1949 amendment, "other county buildings," was not designed to cover all county buildings, but only those from which county government is conducted, like the courthouse. County government has expanded so the last twenty years that the old concept of courthouse is entirely inadequate to take care of the new services the county is furnishing and must have office space to accomplish. The 1949 amendment to the act under review was designed to meet this need. It must be limited to facilities for administering county government and has no reference to school buildings and facilities otherwise provided for.
It is not amiss to point out that when courthouses, jails and other facilities for the administration of county government become inadequate and need replacement or repair, the county commissioners are the ones who determine the time and extent to which replacement and repair are necessary. It is not even suggested here that the county commissioners have abused their discretion in this or that they have precipitated an extravagant or unreasonable layout. It is shown on the other hand that they have provided that said certificates shall mature in five years and that the county will levy only such tax, not to exceed five mills, as is necessary to service both issues of certificates and provide for their payment as they mature and become due; it is also shown that the proposed improvements are limited to necessities for the administration of county government under strict budgetary regulation as set out in Tapers v. Pichard, supra. It is further shown that the contract for such facilities is being executed in due course by authorized budgetary requirements. We find no violation of Sec. 135.01, Florida Statutes 1941, as amended by Chapter 25469, Acts of 1949, F.S.A.
It is therefore our opinion that Palm Beach County has legal authority to issue certificates of indebtedness under Chapter 135, Florida Statutes 1953, F.S.A., for the purpose of constructing a County Office Building, a Children's Home, as well as additions, extensions and improvements to the Courthouse Annex Building and for furnishing *612 and equipping the County Courthouse in the manner proposed without an approving vote of the taxpayer freeholders as required by Section 6, Article IX of the Constitution.
The judgment appealed from is therefore affirmed.
Affirmed.
HOBSON, ROBERTS and O'CONNELL, JJ., concur.
DREW, C.J., and THORNAL, JJ., concur specially with opinion.
THOMAS, J., dissents.
THORNAL, Justice (concurring specially).
Were it not for certain strong convictions on the subject, I would concur without comment in the opinion prepared for the Court by Mr. Justice TERRELL. That opinion is supported by the precedents cited. It is buttressed by the judgment of the able and long-experienced author. I consider myself bound by the cited decisions in the particular case at bar under the doctrine of stare decisis. I did not participate in any of the cases relied upon by the majority. It is appropriate, therefore, to state that in future cases involving the same principle of law I expect to adhere to my own views which are stated herewith.
Such a judicial course is approved by the precedents. Great Northern Railroad Company v. Sunburst Oil & Refining Co., 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360, 85 A.L.R. 254; Contractors Contract NOY 5948 v. Morris, 154 Fla. 497, 18 So.2d 247.
Prior to the general election of 1930, Section 6, Article IX, of the Florida Constitution read:
"The Legislature shall have power to provide for issuing State bonds only for the purpose of repelling invasion or suppressing insurrection, or for the purpose of redeeming or refunding bonds already issued, at a lower rate of interest."
On November 4, 1930, the people approved an amendment to the quoted section, which reads in part as follows:
"* * * and the Counties, Districts or Municipalities of the State of Florida shall have power to issue bonds only after the same shall have been approved by a majority of the votes cast in an election in which a majority of the freeholders who are qualified electors residing in such Counties, Districts, or Municipalities shall participate, * * *." (Emphasis added.)
I find nothing in this constitutional provision which contains any exception. This language is clear and unequivocal. It simply states that counties, districts or municipalities have no power to issue bonds in the absence of the required approval of the freeholders. We have held on numerous occasions that an obligation that pledges an exercise of the ad valorem taxing power is a "bond". To hold that the constitutional provision prohibits the issuance of bonds for one type of public facility but not for another appears to me to be writing into the Constitution a proviso that is not there present.
We have taken note of the obvious reason for the 1930 amendment. It was proposed by the Legislature in 1929, shortly after the collapse of the so-called "Florida Boom". The public credit had been stretched almost to the point of collapse. Taxpayers were engaging in "tax strikes". In many instances ad valorem millages had reached almost unbearable limits. Some taxing units were faced with bankruptcy and collapse. It was against an extension and repetition of this condition that the people in their wisdom wrote the 1930 restriction into the organic law. It is not for us to question their wisdom.
*613 Now again we are passing through an era of lush times and inflated values. Public spending and the public debt are again reaching unprecedented proportions. The records of this Court in bond and revenue certificate validations are in themselves ample to signal a cautious scrutiny of public security issues to make certain that they comport with the requirements of the Constitution.
If the growth and development of our state and its several component governmental units justify a change in the Constitution, adequate procedures are available for the people themselves to make the change. It is beyond the jurisdiction of the Court to write into the organic law anything that is not there or to take from it that which is there. The same restriction applies to the Legislature. The same restriction applies to those who govern at the local level.
The latent danger lurking unseen in Chapter 135, Florida Statutes, F.S.A., becomes obvious when we consider the historical development of the Statute and its complete transformation from the original Act. Its potentials for literally eradicating the constitutional restriction become equally clear. First enacted as Chapter 3421, Acts of 1883, that Act in substance authorized county commissioners "to erect any courthouse or jail" and to levy a building tax "not exceeding five mills per annum, for two consecutive years." By the statutory revision of 1892, the authorization was changed to "not exceeding two mills per annum, for two consecutive years". By Chapter 5698, Laws of Florida 1907, the provision was changed to read "not exceeding five mills per annum, for five consecutive years". Then, by Chapter 9333, Laws of Florida 1923, the Act was amended to authorize county commissioners "to erect or repair any courthouse or jail or erect an additional or additions to any court house or jail." All of these statutes preceded the 1930 amendment of Section 6, Article IX, supra. By Chapter 25469, Laws of Florida 1949, the words "courthouse or jail" were amended to read "courthouse, jail, or other county building". The millage provisions remained at five mills per annum. However, the maximum period was changed from five years to fifteen years. Finally, by Chapter 31402, Laws of Florida 1956, Special Session, county commissioners were authorized to extend the period and levy five mills for thirty consecutive years. It is clear that the development of the very Act on which the appellee relies loudly proclaims the hazards with which it is loaded.
It seems obvious to me that if the Legislature has the power to authorize the levy of five mills for fifteen or thirty years for a "courthouse, jail, or other county building," it could legally raise the authorized millage to twenty-five mills or some other equally high ceiling and extend the period of years in equal proportion. In doing so it would for all practical purposes completely erase from the Constitution the restrictions which the people have placed there. Actually this has already been done pro tanto. There is no magic in the fact that a "ceiling" is placed on the millage or the term for which it may be levied. If it is conceded that the Legislature has the power to authorize an ad valorem tax levy to support a bond issue without a freeholders' election, obviously it can raise the "ceiling" to the point where it becomes meaningless.
Prior to 1930 our statutes placed courthouses and jails in a separate distinct class of county undertaking. We have recognized with a degree of consistency that a courthouse or jail not only serves a county purpose but that each is an absolute essential to the very existence of county government itself. No other public buildings or improvements can be elevated to the same category. In actuality Chapter 135, Florida Statutes, F.S.A., makes no provision whatever for the issuance of bonds. It merely recognizes the peculiar essentiality of courthouses and jails and authorizes a special building tax to pay for them. Authorization to issue bonds supported by the *614 tax has come about entirely by judicial decree. Posey v. Wakulla County, 148 Fla. 115, 3 So.2d 799; Tapers v. Pichard, 124 Fla. 549, 169 So. 39. But see Leon County v. State, 122 Fla. 505, 165 So. 666, and Sunshine Const. of Key West, Inc. v. Board of Com'rs, Monroe County, Fla. 1951, 54 So.2d 524. Conceivably when the people approved the 1930 constitutional amendment they might well have recognized this exceptional status which our statutes had accorded to courthouses and jails for over forty-seven years. At any rate the concept is now so thoroughly grounded in our law that its rejection would not appear justifiable. To go beyond that, however, would appear to me to be taking judicial liberties with the organic law.
In summary the view of the problem which I expect to follow in the future is well stated by the late Justice Mathews in his concurring opinion in State v. Sumter County, Fla. 1952, 60 So.2d 529, and by his opinion, concurred in by the Court, in State v. Florida State Improvement Commission, Fla. 1952, 60 So.2d 747.
I certainly do not question the need for many of the public improvements that could be suggested from time to time. I do not question either the sincerity or the wisdom of the elected officials in their effort to provide such improvements. However, they, like we, are faced with the restrictions placed upon us by the Constitution itself. If the improvements are needed and if an ad valorem levy to support a bond issue is contemplated to provide the funds to accomplish the desirable result, it is up to the people themselves to place their stamp of approval on the proposal as a condition precedent to its accomplishment. The Constitution clearly requires this. In the absence of such taxpayer confirmation, the Constitution prohibits the issuance of the bonds.
DREW, Chief Justice.
I concur in the foregoing opinion of Mr. Justice THORNAL and adopt as mine the views he so ably and timely expresses.
THOMAS, Justice (dissenting).
It is my view that bonds for some of the projects may be approved and some may not, because of the inhibition in Sec. 6, Article IX of the constitution, but inasmuch as they are not severable I must dissent.