**CITY OF ZEPHYRHILLS, FLORIDA,**
Appellant,

v.

**R. E. CRUMMER & COMPANY,**
Appellee.

**No. 16061.**

United States Court of Appeals
Fifth Circuit.

Nov. 30, 1956.

James S. Welch, Leonard C. Carter, Lakeland, Fla., for appellant.

Joseph C. Young, Clearwater, Fla., Claude R. Edwards, Orlando, Fla., for appellee.

Before RIVES, TUTTLE and JONES, Circuit Judges.

JONES, Circuit Judge.

The City of Zephyrhills, Florida, in 1926 or 1927, probably 1926, entered into a contract with L. B. McLeod Construction Company for street paving and the installation of whiteway improvements. The City was empowered by its legislative charter to pave, grade and otherwise improve streets and to make the expense of any and all such improvements a lien upon the abutting property. Laws of Florida, Special Acts 1925, ch. 11327, § 9. Pertinent to the inquiry necessary to our decision are the following portions of the City's charter:

"Whenever it shall be deemed advisable to issue bonds for the purpose or purposes hereinafter named, to wit: For raising money to be used in constructing or maintaining waterworks or a system of sewage, or otherwise promoting the health of said city; for constructing, widening, opening, extending or paving the streets or sidewalks of said city; for opening, constructing or maintaining public parks or promenades; for erecting school houses and maintaining a system of public education in said city; for establishing and maintaining a fire department; for erecting and maintaining buildings for the use of said city; for redemption of bonds outstanding, and for any one or more of said purposes, the City Council are hereby authorized to issue bonds of said municipalities under the seal of the corporation in an amount not to exceed fifteen per centum of the assessed value of the taxable property within the limits of said city, said value to be determined by the latest completed assessment roll of the city, signed by the Mayor, countersigned by the President of the City Council and attested by the Clerk, with interest coupons attached, which shall be signed in like manner; provided, that waterworks bonds shall not be counted as any part of the bonded indebtedness within the said limitation; and provided further, that before said bonds shall be issued the issuance of same shall be approved by an affirmative vote of a majority of the electors voting at an election to be held for that purpose, which election shall be regulated by ordinance as to manner of conducting or certifying same, after the same has been advertised for not less than thirty days in a newspaper published in Zephyrhills, and at which election only resident electors otherwise qualified, who shall have in their own right record title to taxable real estate within the corporate limits and who have owned such lands continuously for at least three months before the date of holding said election, shall be entitled to vote. The bonds herein provided for shall in no case be sold for less than ninety-five per cent. of their par value and shall not bear a greater interest than six per centum per annum." Id. § 37.

"When at any time the City Council shall decide to pave, grade, lay out, open, repair or otherwise im-

prove any street, alley or highway, or any part thereof, or to construct, repair or improve any sewer or drainage pipe or passage, they shall pass a resolution ordering the same to be done, and shall advertise for bids for making said improvements, * * * Whenever any of said improvements shall have been completed and shall have been accepted by the City Council * * *, and after ascertaining the entire cost of the improvement completed, and accepted, the City Council shall assess against the property abutting on the street, alley or highway improved two-thirds of the entire cost of the improvement, one-third against the property abutting on each wise, and the other one-third of the cost thereof shall be borne by the city; but when sewers are laid no greater amount of the cost thereof shall be assessed against the abutting property than two-thirds of the cost of laying a twelve (12″) inch sewer." Id. § 42.

"Within five days after the said assessments have been made, or as soon thereafter as the same can be done, unless the same have in the meantime been paid, the City Council shall cause certificates of indebtedness for the amount so assessed to be issued against the abutting property. * * *" Id. § 43.

"In all cases provided in this Act for the paving, grading, laying out, opening, repairing or otherwise improving of any street, alley or highway * * *, the City Council shall by resolution or otherwise assess the entire cost of such improvement against the abutting property if the improvement consisted of the construction or repair of sidewalks or curbs, and shall assess two-thirds of the entire cost of the improvement against the abutting property if the same consisted of any of the other improvements hereinbefore mentioned, the remaining one-third thereof to be paid for by the city. If the assessments so made are not paid within five days after the making thereof, the City Council shall cause certificates of indebtedness to be issued therefor, in the manner and form in this Act specified. * * *" Id. § 46.

Two-thirds of the cost of the improvements made under the McLeod Construction Company contract was to be assessed against the property abutting on the streets improved by the work done. There were certificates issued pursuant to assessments against which improvement bonds were issued in the amount of $74,620.50. When the work called for by the construction contract had been completed the contractor submitted a final estimate and a statement showing an adjusted balance of $82,060.00. Further credits reduced the balance to $81,-435.56. The plaintiff, R. E. Crummer & Company, has produced a copy of a purported resolution of the City Council reciting its adoption on August 19, 1927. The defendant City, in its answer, charged that the plaintiff "secured agents to alter the minute books of the City of Zephyrhills and to transplant in the records of the said City a fraudulent resolution authorizing the issuance of said notes in question, so as to make it appear that the said notes were regularly and legally issued and thus deceive the Court", and "The notes are therefore void". From answers of the City to the plaintiff's interrogatories we learn that it was contended that the minutes are not true and official records of the City, and that the signature of the president of the City Council thereon is not genuine. The preamble to the resolution (we shall refer to it as such) authorized the sale to L. B. McLeod of improvement bonds and the credit of the purchase price on the amount owing on the contract the payment of a small amount of cash and the issuance to the contractor of notes of the City in the amount of $10,515.06. Notes in that amount were issued to the contractor for

the balance due it. The notes were transferred by the contractor and acquired by the plaintiff from the contractor's assignee. The plaintiff brought suit against the City on three of these notes. The district court denied the City's motion for summary judgment but entered, on motion of the plaintiff, a summary judgment against the defendant for principal and interest of $24,549.06 and attorney's fees of $4,800. The City has appealed.

The City makes two contentions. It urges that the notes are to be regarded as bonds, that they were issued without the approval of an affirmative vote of a majority of the electors voting at an election held for that purpose and hence invalid; and that its motion for a summary judgment should have been granted. Its other contention is that there were issues of fact which should not have been disposed of by a summary judgment.

■ On the question of the validity of the notes as affected by the provisions of the City's charter requiring approval by electors of bonds to be issued, it is urged by the City that there is a close analogy between the language of the Zephyrhills charter and that of an amendment to the Florida Constitution adopted in 1930 providing that "Counties, Districts or Municipalities of the State of Florida shall have power to issue bonds only after the same shall have been approved by a majority of the votes cast in an election in which a majority of the freeholders who are qualified electors residing in such Counties, Districts, or Municipalities shall participate." Fla.Const. Art. 9, § 6, F.S.A. It is not contended that the constitutional provision itself applies here but that the decisions of the Florida Supreme Court construing and applying it provide precedents that control our determination of the appeal. Without adopting such doctrine we may examine a leading case of the Florida court applying the constitutional amendment for such light as it may throw on the problem presented to us.

One of the definitions of a "bond" as used in the constitutional provision is:

"Any contractual device for present funding of tax revenues contemplated to be raised in the future, contrived to be issued as legal security to obligee by means of which obligee would acquire legal or equitable right to coerce by judicial processes repayment of a sum advanced on strength thereof, together with interest, is a 'bond' within constitutional prohibitions and limitations as to issuance of bonds by public authorities". Leon County v. State, 122 Fla. 505, 165 So. 666.

In other opinions of the Supreme Court of Florida substantially the same definition is adopted. See State v. Florida State Improvement Commission, Fla., 60 So.2d 747. Other cases illustrative of the various conclusions reached by the Florida Court are Tapers v. Pichard, 124 Fla. 549, 169 So. 39; Neff v. City of Jacksonville, 139 Fla. 179, 190 So. 468; Posey v. Wakulla County, 148 Fla. 115, 3 So.2d 799; State v. Pinellas County, 160 Fla. 549, 36 So.2d 216; State v. Florida State Improvement Commission, Fla., 48 So.2d 165; City of Jacksonville v. Nichols Engineering & Research Corp., Fla., 49 So.2d 529. The most recent of the many cases dealing with this constitutional limitation was decided on September 21, 1956. Palm Beach County, Florida, petitioned the Florida Circuit Court for validation of a proposed issue of certificates of indebtedness in the amount of $750,000. The proceeds were to be used for constructing a county office building, a children's home, extensions to a court house annex and for furnishing and equipping the county court house. Payment was to be made from a tax levy of not more than five mills for not to exceed fifteen years. The doctrine of the court's decision and of its prior decisions, as stated by the court, is that approval by the electorate need not be given if funds were required

with which to make payment for a current need essential to the administration of government. State v. County of Palm Beach, Fla., 89 So.2d 607.

In the case before us the notes were issued prior to the adoption of the constitutional amendment by the people of Florida. The decisions construing it might be regarded as persuasive if there be no precedent more nearly in point. We find, however, that the decision of the Supreme Court of Florida in Ginsberg v. City of Daytona Beach, 103 Fla. 168, 137 So. 253, was upon facts so nearly parallel to those of the case before us as to be controlling. The charter of Daytona Beach, Laws of Florida, Special Acts 1925, ch. 10466, as amended Laws of Florida, Special Acts 1927, ch. 12653, was enacted at the same legislative session and was very similar in its provisions to that of Zephyrhills. It contained provisions for street improvements and special improvement assessments and liens. Among other provisions of its charter was the following:

"The City Commission, in its corporate capacity, is hereby authorized and empowered to issue from time to time bonds of said city in such denomination and bearing such rate of interest not exceeding seven per cent and becoming due in such time and upon such conditions as may be determined by the City Commission, for the purpose of building or repairing all public buildings or water works; widening, extending, or paving streets, or acquiring, widening, extending or improving parks, golf links, playgrounds, etc.; * * * or for any other municipal purpose, provided, however, that before the issue of any 'such bonds shall be made, an ordinance shall be passed expressing in exact terms the amount of the contemplated bond issue and purposes for which moneys to be realized therefrom are to be used, which said ordinance proposing said issue of bonds shall subsequently be ap-

proved by a majority vote of the electors of each zone of the city, qualified to vote at such election, who shall be freeholders in said city at the time of voting, and for at least six months prior thereto, at an election held for that purpose at such time and in such manner as may be provided by law and the ordinances of the City." Ch. 10466, § 126, as amended by Ch. 12653, § 2.

By another provision of its charter Daytona Beach was empowered to levy ad valorem taxes for its ordinary purposes, for permanent improvements, to pay interest and provide for the payment of principal of such indebtedness as may be incurred, and for other enumerated purposes. Ch. 10466, § 98.

In August of 1929 the City of Daytona Beach entered into a contract for making municipal improvements including a board walk along the ocean front in the city. Upon performance of the contract the city gave its note to the contractor in payment for the work. The city was about to make payment of the note when a suit was brought to enjoin it from so doing. The suit was dismissed and on appeal the Supreme Court of Florida sitting en banc, affirmed, saying:

"We have examined the city charter of the city of Daytona Beach (chapter 10466, Special Acts of 1925), and we think section 15 and other provisions of that act fully warranted the city in making the improvements complained of. When power is vested in a municipality to 'regulate and provide for the construction' of an improvement, it follows (there being no inhibition to the contrary) that the contract to construct and a note to pay for the improvement may be implied as a necessary incident to the power conferred. McQuillon, Municipal Corporation (2d Ed.) vol. 5, 926; C.J. 44, 1179; R.C.L. 19,993. The city was fully authorized by section 98 of its charter to assess and collect a

tax to pay for the improvement complained of.

\* \* \* \* \* \* ·

"The only remaining question necessary for us to adjudicate is whether or not the note complained of was violative of section 6 of article 9 of the Constitution as amended in 1930, the obligation thereof not having been voted on and approved by the free holders of the city.

"The note was executed and delivered December 29, 1929 almost a year prior to the adoption of section 6 of article 9 as amended. It amounted to nothing more than the evidence of the debt and did not occupy the status and dignity of a bond. It is not within the class of obligations covered by section 6 of article 9 as amended in November, 1930." Ginsberg v. City of Daytona Beach, 103 Fla. 168, 137 So. 253, 254.

The Ginsberg case has had the subsequent approval of the Supreme Court of Florida in Williams v. Town of Dunnellon, 125 Fla. 114, 124, 169 So. 631, and its holding was followed by this Court in Port of Palm Beach District v. Goethals, 5 Cir., 104 F.2d 706. It is decisive of the question before us as to the power of the City of Zephyrhills to issue the notes.

In its second contention the City asserts that the district court erred in striking its ninth defense of lack of power to issue the notes under its charter, the tenth defense that the notes were not issued pursuant to the charter requirements and the eleventh defense alleging that the plaintiff altered the City's minute books and inserted false records in the City's files. The ninth defense of the City raised no factual issue. The question of law it poses we decide against the City.

The City's tenth defense of failure to comply with the charter in the issuance of the notes is dependent upon its eleventh defense where it charges the plaintiff with the alteration of the City's minute books and the transplanting of a fraudulent or spurious resolution. The plaintiff, in support of its motion for summary judgment, filed affidavits showing that the minutes of the meeting incorporating the resolution authorizing the issuance of the notes were found among the rather poorly kept records in the office of the City Clerk. Another affidavit was submitted for the purpose of showing that the signatures of the City officials affixed to the minutes were genuine. The City did not submit anything to show the existence of a genuine issue of a material fact. Indeed, it may be doubted that there was any necessity for the plaintiff to produce a resolution authorizing the giving of the notes. See Port of Palm Beach District v. Goethals, supra.

■ The City claims that the court should not have entered a summary judgment when there was a defense of forgery of the notes. In its original answer the City did not assert that the notes were forged. In a pre-trial order dated January 3, 1955, the court gave the City permission to amend its defenses to include the defense of forgery of the notes sued upon. No amendment was filed during the five-month interval between the date of the pre-trial order and the hearing on plaintiff's motion for summary judgment. The plaintiff filed the affidavit of one qualifying as an expert who said the signatures on the notes were genuine. The City made no showing that a factual issue could be made on the point. The City suggests that when a defense of forgery is raised no summary judgment can be properly entered. We find no principle or precedent requiring such a holding. We have no doubt but that the following is a correct interpretation of the applicable rule:

"Subdivisions (a) and (b) of Rule 56 [Fed.R.Civ.P. 28 U.S.C.A.] authorize motions for summary judgment by a party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment and by a party against

whom a claim, counter-claim, or cross-claim is asserted or a declaratory judgment is sought. Thus, unlike the procedure in many states, a summary judgment under this rule is available both to plaintiffs and defendants in all forms and kinds of civil actions to which these rules apply." 3 Barron and Holtzoff, Federal Practice and Procedure 63, § 1232.

 The record shows a proper case for a summary judgment. The judgment entered was a proper one. It is affirmed.