THORNAL, Justice.
The State seeks reversal of a decree validating an issue of bonds.
The sole question is whether the proposed bond issue is valid in the absence of the approving vote of the freeholders prescribed by Section 6, Article IX of the Florida Constitution, F.S.A.
Manatee County owns and operates a hospital. The County proposes to issue bonds in the amount of $250,000 to finance the cost of constructing additions to the hospital. The schedule of maturities suggests that the bonds will be liquidated in about five years. However, the bond resolution provides that principal and interest to become due on the bonds “is payable from and secured by a first charge on and the pledge of the proceeds derived from an ad valorem levy of not to exceed five (5) mills on the dollar of the assessed valuation of all property in Manatee County, Florida, excluding all property exempt by law and homesteads, for a period of fifteen consecutive fiscal years, beginning with the fiscal year 1956-57.” The resolution also provides that the County is under no obligation to pay the principal or interest except from the proceeds of said five-mill levy. The proposal to issue the bonds was not submitted to the freeholders. Nonetheless,, the trial judge was obviously of the view that issuance of the bonds absent freeholder approval was authorized by prior decisions of this Court. He thereupon entered a decree validating the bonds. The State appeals and seeks reversal of the decree of validation.
The appellant contends that Section 6, Article IX of the Florida Constitution prohibits the issuance of the bonds without freeholder approval.
The appellee County contends that the operation of the hospital is an essential function of county government and in the light of certain cited opinions of this Court, freeholder approval is unnecessary.
Preliminary to our consideration of the law applicable, we concede that this record thoroughly demonstrates the importance and *382 ■desirability of the proposed improvement. There is testimony to the effect that in the judgment of the County officials there -would be no question but that the freeholders would approve the issue if it were ■submitted to them. It is further explained in the record that the reason for not submitting the proposal to an election was that in the judgment of the County officials such ■an election would postpone the ultimate issuance of the bonds from eighteen months to two years. Why this is so we are not informed.
The position of the County is founded on an interpretation of Section 135.01, Florida Statutes, F.S.A., which authorizes county commissioners to levy a building tax not exceeding five mills per annum for not more than thirty consecutive years, the proceeds of the tax to be used “to erect or repair any courthouse, jail or other county building * * Appellee submits the view that the county hospital falls within the classification of a “county building” and insists that the hospital is such an essential to the existence of county government that the financing of its improvements by the method here presented is constitutionally sound.
Section 6, Article IX of the Florida Constitution provides in part as follows:
“ * * * the Counties, Districts or Municipalities of the State of Florida shall have power to issue bonds only after the same shall-have been approved by a majority of the votes cast in an election in which a majority of the freeholders who are qualified electors residing in such Counties, Districts, or Municipalities shall participate, to be held in the manner to be prescribed by law * *
We are not aware of any provision in the Constitution that is any clearer or more concise and to the point, than the one just quoted. It is totally lacking in ambiguities. It simply but positively and-unequivocally requires a freeholders’ election as a condition precedent to the issuance of county, district or municipal bonds. We do have in the books a line of decisions which hold in effect that courthouses and jails are so completely essential to the very existence of county government that the quoted provision of the Constitution could not have been considered as applicable to them when the constitutional amendment was approved. These decisions all turn on the point of basic and fundamental essentiality of the particular improvements involved. They point out, for example, that in the enforcement of the criminal laws a jail to house offenders is absolutely necessary. The law? could not be enforced without one. Those cases likewise point out that in the conduct of county government it is essential to have a building within which to house the offices, equipment and public records. The essentiality of these two types of structures emphasizes the basic reason for classifying them in a category peculiar unto themselves. No other public improvement occupies the same status. Our decisions have justified the conclusion which we have reached with reference to these two types of building on the fact that the rule establishing their essentiality was thoroughly grounded in our law when Section 6, Article IX of the Constitution was amended as above quoted in 1930.
Despite this limited license which has been taken with the organic law by judicial decree, there are, nevertheless, those who are of the view that the constitutional provision does not even permit of this exception. We must confess that there appears to be some considerable merit to that view when we examine the language of the provision involved. It is not necessary, however, to attempt to reconcile potential conflicts in this instance in order to lead us to the conclusion that, despite the need, justification, convenience and undoubted service that ■ the proposed hospital addition would render, it is not essential to the existence of county government. It can be advanced in reply that there are sick people who need medical care, that there is a shortage of *383 available hospital rooms, that the public health justifies the improvement, but it cannot in our judgment be successfully asserted that the county government would cease to exist if the improvement is not provided. That, in the ultimate, is the test of essentiality required to justify the exception which has heretofore been recognized by our decisions.
The appellee relies on our recent opinion in State v. County of Palm Beach, Fla. 1956, 89 So.2d 607. The majority of the Court there concluded that the construction of a county office building served the same functions as the courthouse and a children’s home otherwise described as a building for the detention primarily of juvenile delinquents and minors coming under the jurisdiction of the Juvenile Court should both be classified as essential to the administration of county government. It was the view of the majority that the two buildings there involved were well within the classification of courthouses and jails as recognized by prior decisions. However the basic division of the thinking of the Court might be noted by reference to the dissenting and special concurring opinions in the case last cited. Regardless of this, State v. County of Palm Beach, supra, certainly cannot be taken as a precedent for the issuance of ad valorem tax bonds to construct any and every type of county building that might be conceived. The decision is well clothed with the established limitations on the type of structure that will be permitted.
So it was in Tapers v. Richard, 124 Fla. 549, 169 So. 39, one of the basic decisions on which this general line of cases is bottomed. There a county was permitted to issue certificates to be liquidated out of the proceeds of an ad valorem levy. The certificates were used to finance the building of a county jail.
To demonstrate distinctions which have been made, reference might be had to Yon v. Orange County, Fla.1949, 43 So.2d 177. Prior cases are there analyzed. In the Yon case it was held that a county could not issue certificates supported by a one-mill levy for five years to obtain money to purchase rights-of-way for highway improvements. It may be argued that in view of the tremendous increase in automobile traffic and the economic importance of a county road system to serve communities of the area, the acquisition of rights-of-way in the improvement of a highway system is essential to the continuity of the government itself. This Court, however, reached a conclusion to the contrary.
The strongest case adverse to the position of the appellee is State v. Florida State Improvement Commission, Fla.1952, 60 So. 2d 747. There in an exhaustive opinion prepared for the majority by the late Justice Mathews it was expressly held that a proposal to issue bonds pledging ad valorem taxes to be used for constructing a county hospital building was invalid in the absence of an approving vote of the freeholders. The able author of that opinion thoroughly covered many of the points which we have made above. Likewise, earlier decisions of this Court were thoroughly analyzed, discussed and either agreed to or decided as not controlling. Reference should be made to that opinion not only for its clear-cut delineation between that which is essential and that which is not, but likewise for its lucid analysis of the reasons for the constitutional provision involved and the practical importance of abiding by its requirements.
Once again we state that when the organic law compels us to conclude that a proposal to finance an important and much desired public improvement is in contravention of the requirements of the Constitution, we do so with reluctance and regret. Nonetheless, we did not write the Constitution. We have no power to tamper with it. Whether Section 6, Article IX, Florida Constitution, is wise and salutary is not within the orbit of our consideration. The people placed the provision in the organic law. Until they remove it, we and all other public officials are bound by it. Any other *384 conclusion would reduce' the Constitution to an obsolete shibboleth.
For the reasons above announced, the decree will have to be—
Reversed.
TERRELL, C. J., and HOBSON and ROBERTS, JJ., concur.